J. C. Penney Casualty Insurance Company, Petitioner *v.* Commonwealth of Pennsylvania, Department of Insurance, William J. Sheppard, Insurance Commissioner, Respondent.

Argued March 7, 1979, before President Judge BOWMAN and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, DISALLE and MACPHAIL. Judges CRUMLISH, JR. and CRAIG did not participate.

*William R. Balaban,* with him *Thomas R. Balaban,* and *Robert J. Demer,* for appellant.

*Paul A. Adams,* with him *Barbara Anne Brown,* Assistant Attorney General, and *John H. Isom,* Chief Counsel, for respondent.

OPINION BY JUDGE MENCER, June 13, 1979:

This is an appeal by J.C. Penney Casualty Insurance Company (Penney) from an order of the Insurance Commissioner (Commissioner). Two important questions are raised: (1) whether the occurrence of two theft losses in an 18-month period is sufficient evidence of a "substantial change or increase in hazard" so as to justify the nonrenewal of an insurance policy pursuant to Section 5(a)(9) of the Unfair Insurance Practices Act (Act), Act of July 22, 1974, P.L. 589, *as amended*, 40 P.S. §1171.5(a)(9); and (2) whether due process is denied when one assistant attorney general acts as prosecuting attorney and another, assigned to the same office, acts as hearing examiner.[1]

The facts are undisputed. On February 8, 1974, Penney issued a standard "renters" insurance policy to William Prindle and Deborah Prindle. Between January 7, 1975 and August 10, 1976, the Prindles suffered two theft losses for which Penney paid a total of $1721. On November 24, 1976, Penney notified the Prindles that it would not renew their policy because of the two losses.

---

[1] Penney has similarly argued that its due process rights have been violated because the authority and responsibility to investigate, prosecute, and pass upon alleged violations of the Act are vested in the Commissioner by Sections 7, 8, and 9 of the Act, 40 P.S. §§1171.7, .8, .9. *See Dussia v. Barger*, 466 Pa. 152, 351 A.2d 667 (1975). However, this delegation of authority to the Commissioner is, in effect, a delegation to the Department of which he is the head, and it is well established that it is not a violation of due process for the same agency to fulfill investigatory, prosecutory, and judicial functions, so long as these functions are adequately separated. *See, e.g., Withrow v. Larkin*, 421 U.S. 35 (1975); *State Dental Council & Examining Board v. Pollock*, 457 Pa. 264, 318 A.2d 910 (1974). Of course, the Commissioner himself did not personally investigate or prosecute the case, and there is no evidence that the investigatory, prosecutory, and judicial functions of the Department were not adequately separated.

The Prindles, pursuant to Section 5(a)(9)(iv) of the Act, 40 P.S. §1171.5(a)(9)(iv), requested the Department of Insurance (Department) to review Penney's action. The Department determined that there was reason to believe Penney had violated the Act, and a hearing was therefore scheduled pursuant to Section 8 of the Act, 40 P.S. §1171.8.[2] An assistant attorney general attached to the Department was assigned by the Commissioner to act as hearing examiner. Another assistant attorney general attached to the same office was assigned to prosecute the case on behalf of the Department.

At the hearing, the only evidence presented to justify Penney's nonrenewal of the Prindles' policy was the occurrence of the two theft losses. Concluding that this was insufficient to establish an "increase in hazard" within the meaning of the Act, the Commissioner ordered Penney to offer to renew the policy and to cease and desist from refusing to renew other policies solely on the basis of loss frequency.[3] Penney's appeal to this Court follows.

---

[2] Rules promulgated by the Commissioner provide that a hearing will be scheduled at the request of the insured or the insurer but that otherwise the Commissioner will decide the case based upon the Department's investigative report. Penney contends that the Commissioner erred in scheduling a hearing despite the fact that neither Penney nor the Prindles requested one. Even assuming the Commissioner erred in this regard, we fail to see how Penney could possibly have been harmed by being given an opportunity to be heard prior to a decision.

[3] Penney contends that the Commissioner has no power under the Act to order an insurance company to reinstate insurance coverage. However, the Commissioner is expressly given the power in Section 9 of the Act, 40 P.S. §1171.9, to issue orders requiring that an insurance company cease and desist from violating the Act. Refusing to renew is a violation of the Act under Section 5(a)(9), and the Commissioner's order was simply an order that Penney cease and desist from refusing to renew the Prindles' policy.

Section 4 of the Act, 40 P.S. §1171.4, makes it unlawful for insurance companies to engage in "an unfair or deceptive act or practice." Unfair or deceptive acts or practices are defined in Section 5(a)(9) to include, *inter alia,*

[c]ancelling any policy of insurance covering owner-occupied private residential properties or personal property of individuals that has been in force for sixty days or more or *refusing to renew any such policy unless* . . . there has been a substantial change or increase in hazard in the risk assumed by the company subsequent to the date the policy was issued. . . . (Emphasis added.)

The phrase "increase in hazard" has traditionally been used in provisions of insurance policies which allow the insurer to avoid liability on the policy if there has been an "increase of the hazard to which the insured property is exposed." 8 G. Couch, *Cyclopedia of Insurance Law* §37:692, at 299 (2d ed. 1961). *See also* lines 31-32 of the Standard Fire Insurance Policy of the State of Pennsylvania in Section 506(2) of The Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, *as amended,* added by the Act of August 23, 1961, P.L. 1081, 40 P.S. §636(2); *Smith v. Penn Township Mutual Fire Association,* 323 Pa. 93, 99, 186 A. 130, 133 (1936). As used in this context, the phrase has acquired a peculiar and appropriate meaning which the legislature must be presumed to have had in mind in using it in Section 5(a)(9). *See* Statutory Construction Act of 1972, 1 Pa. C.S. §1903(a).

'The term "increase of hazard" denotes an *alteration or change* in the situation or condition of the property insured which tends to increase the risk'. . . . The policy is issued to protect the insured against existing risks, which are contem-

plated and covered by the premiums, and, in the absence of fraud or concealment, the hazard in respect to the risk assumed cannot be enhanced or enlarged by a mere continuation of the conditions and uses existing at the time the policy was issued. (Citations omitted.) (Emphasis in original.)

*Rossini v. St. Paul Fire & Marine Insurance Co.,* 182 Cal. 415, 424, 188 P. 564, 568 (1920).

*See also New England Insurance Co. v. Cummings,* 164 F. Supp. 553 (S.D. Miss. 1958). Thus, to establish an increase in hazard, there must be evidence of a *change* in the situation which *substantially* increases the probability that the event insured against will occur.

Penney introduced no evidence whatsoever that any change had occurred to increase the risk of future losses. The fact that two losses had already occurred may be nothing but confirmation that the risk insured against does in fact exist, not that this risk has increased. Exceptionally frequent losses may eventually generate a suspicion that something has indeed changed, but, absent additional evidence, it will in most cases be equally likely that the losses are simply the result of bad luck, the risk of which the insurance company has, for a fee, assumed. This is particularly true where, as here, only two losses in an 18-month period are involved, one of which did not even occur at the Prindles' residence. Finally, even if we were to assume that the two losses do indeed indicate that the risk of loss has increased, there is no basis in the record upon which to conclude that the increase has been substantial. We therefore conclude that Penney failed to establish a justification for refusing to renew the Prindles' policy and that the Commissioner correctly concluded that Penney had violated Sections 4 and 5 of the Act.

With regard to Penney's second argument, this Court has, on several occasions, expressed reservations about the propriety of one attorney's acting as prosecutor where another attorney attached to the same office advises the tribunal or acts as hearing examiner. *State Board of Podiatry Examiners v. Chairman,* 31 Pa. Commonwealth Ct. 615, 618-19, 377 A.2d 1022, 1024 (1977); *Sheppard v. American Bankers Insurance Co.,* 26 Pa. Commonwealth Ct. 189, 363 A.2d 874 (1976), *aff'd,* 478 Pa. 532, 387 A.2d 449 (1978); *Pennsylvania Human Relations Commission v. Thorp, Reed & Armstrong,* 25 Pa. Commonwealth Ct. 295, 361 A.2d 497 (1976); *State Board of Medical Education and Licensure v. Grumbles,* 22 Pa. Commonwealth Ct. 74, 347 A.2d 782 (1975). We have held, however, that where the facts are undisputed the error, if any, is harmless since any decisions which may be the result of bias can be overturned on appeal if incorrect as a matter of law. *Thorp, Reed & Armstrong, supra.* Since there is no factual dispute in this case, we are compelled to follow the latter case and to reject Penney's argument on this issue.[4]

Accordingly, we enter the following

ORDER

AND Now, this 13th day of June, 1979, the order of William J. Sheppard, Insurance Commissioner, dated April 14, 1978, is hereby affirmed.

---

[4] After the hearing, but before a decision was rendered, the prosecuting attorney was promoted to Acting Chief Counsel, thereby becoming the hearing examiner's supervisor. The prosecuting attorney immediately withdrew from the case and took no further part in the prosecution or in the decision-making process. For this reason, Penney's reliance on this Court's decision in *American Bankers Insurance Co., supra,* where the hearing examiner *failed* to withdraw although his subordinate was prosecuting the case, is misplaced.