529 A.2d 471

**Leon C. HARDY and Helen M. Hardy, Appellants,**

**v.**

**PENNOCK INSURANCE AGENCY, INC., Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 7, 1986.

Filed July 22, 1987.

208

Alan Kear, Philadelphia, for appellants.

Before McEWEN, DEL SOLE and KELLY, JJ.

KELLY, Judge:

This is an appeal from the order of the trial court sustaining appellee's preliminary objections to appellants' original complaint and dismissing counts two, three and four of that complaint. We must first address whether this Court has proper jurisdiction to entertain appellants' issues on appeal.

Appellants contend in their Statement of Jurisdiction that this appeal is properly taken from the order of the lower court dismissing three causes of action. Appellants aver that all three dismissals are final and appealable orders as set forth by this Court in *Cloverleaf Development, Inc. v. Horizon Financial F.A.*, 347 Pa.Super. 75, 500 A.2d 163 (1985). (Appellants' Brief at 2). We do not agree *in toto*.

In *Cloverleaf*, this Court stated:

[1] The first issue to be resolved is whether appellants are properly before this Court. An appeal will lie only from a final order unless otherwise permitted by statute. 'A final order is usually one which ends the litigation or, alternatively, disposes of the entire case.... "Conversely, an order is interlocutory and not final unless it effectively puts the litigant 'out of court.'"' *Praisner v. Stocker*, 313 Pa.Super. 332, 336–337, 459 A.2d 1255, 1258 (1983) (citations omitted), quoting *Giannini v. Foy*, 279 Pa.Super. 553, 556, 421 A.2d 338, 339 (1980). *See also: Pugar v. Greco*, 483 Pa. 68, 72–73, 394 A.2d 542, 544–545 (1978); 42 Pa.C.S. § 742. 'As a general rule, an order dismissing some but not all counts of a multi-count complaint is interlocutory and not appealable.' *Praisner v. Stocker, supra*, 313 Pa.Super. at 337, 459 A.2d at 1258. This is so because in most such instances 'the plaintiff is not out of court and is not precluded from presenting the merits of his cause of action.' *Id.*, 313 Pa.Superior Ct. at 338, 459 A.2d at 1258. However, the general rule is not without exceptions. Where the dismissal of one count or several counts of a multi-count complaint has the effect of precluding the plaintiff from pursuing the merits of separate and distinct causes of action, the order sustaining preliminary objections is then final, not interlocutory, with respect to those causes of action dismissed. The plaintiff is 'out of court' with respect thereto. *Id.*, 313 Pa.Superior Ct. at 339, 459 A.2d at 1258–1259. This is to be distinguished from the situation in which separate counts have been used to state alternate theories to support recovery on the same cause of action. In such

cases, the dismissal of one count does not prevent the plaintiff from proceeding to a determination of the underlying cause of action. *Id.*, 313 Pa.Superior Ct. at 341, 459 A.2d at 1260.

\* \* \* \* \* \*

In the instant case, the first count of the complaint, containing a cause of action for alleged breach of contract, awaits disposition in the trial court. The second count is merely a restatement of the first count and includes a claim for punitive damages.... Appellants are not 'out of court' on their cause of action for breach of contract; and, therefore, the trial court's rejection of their alternate theory and the claim for punitive damages contained in the second count was interlocutory. Such an order would not ordinarily be appealable.

347 Pa.Superior Ct. at 81–82, 500 A.2d at 166–7.

## I.

Applying our analysis in *Cloverleaf* to the facts of the instant appeal, we are unable to conclude, as appellant argues herein, that all three dismissals qualify as final and appealable orders.

Here, appellants filed a four count complaint against appellee after their dwelling and personal property were damaged in a fire. Count I of said Complaint alleged, in assumpsit, that appellee violated its agreement with appellants to provide a proper and adequate fire and/or hazard insurance policy. Count II, in trespass, alleged with specificity the carelessness and negligence which comprised appellee's breach of contract. Count III, in trespass, alleged that the conduct of appellee amounted to misrepresentation, fraud and deceit and demanded recovery for compensatory and punitive damages. Count IV, in trespass, alleged that appellee's actions constituted unfair or deceptive acts or practices under the Pennsylvania Unfair Insurance Practices Act, 40 P.S. 1171.1 *et seq.* and/or the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201–1 *et seq.*

■ Reiterating the rule set forth in *Cloverleaf,* if the dismissal of one count or several counts of a multi-count complaint has the effect of precluding the plaintiff from pursuing the merits of separate and distinct causes of action, the order sustaining preliminary objections is then final and appealable as to those causes of action dismissed; where such separate counts merely state alternate theories to support recovery on a single cause of action, the dismissal of one count does not put plaintiff "out of court" as to the cause of action raised, and the order is therefore interlocutory and not appealable. *Cloverleaf,* 347 Pa.Superior Ct. at 82, 500 A.2d at 166.

To determine whether the causes of action in this case are final and appealable, we must look at each count individually. Here, of the four counts in the original complaint, all but Count I, alleging in assumpsit that appellee violated its agreement to provide adequate fire and/or hazard insurance, were dismissed. Should the cause of action of any of the three dismissed counts still exist within Count I, the dismissed count would be deemed an "alternate theory to support recovery on the same cause of action" as set forth in *Cloverleaf, supra,* and as such, appellant would not be found to be "out of court" as to that cause of action. Our individual analysis of the dismissed counts follows.

## II.

■ Count II (in trespass) asserts the particular acts of negligence and carelessness of appellee's breach of the agreement, which precipitated the alleged damages suffered. Though instituted as a trespass action in the original complaint, Count II presents what this Court has labelled a negligent breach of contract action. *See Raab v. Keystone Insurance Company,* 271 Pa.Super. 185, 412 A.2d 638 (1980). Because breach of contract is the cause of action which remains intact under Count I, and further, since appellee's negligence is specifically raised in Count I, paragraph 15 of appellants' complaint, appellants are not "out of

court" as to this cause of action.[1] Based on our test in *Cloverleaf,* the order dismissing Count II is deemed interlocutory and not final and appealable.

■ Count III (in trespass) asserts the theory of misrepresentation, fraud and deceit on the part of appellee. Appellants request judgment against appellee for compensatory and punitive damages. Though Count I refers to the misrepresentation of appellee in paragraph 14, that count is brought as an action in assumpsit. Count III reflects a common law action in trespass for fraud and deceit. Consequently, Count III is not merely an alternative theory supporting a single cause of action; this action is separate and distinct from a breach of contract action brought in assumpsit. Therefore, appellants are "out of court" as to this cause of action. The dismissal of Count III was a final and appealable order and may now be presented to this Court for consideration.

■ Count IV (in trespass) alleges the existence of unfair or deceptive acts or practices under the Unfair Insurance Practices Act, and/or the Pennsylvania Unfair Trade Practices and Consumer Protection Law. This claim is not present in Count I of appellants' complaint. It is a separate and distinct cause of action based upon statutory law. Therefore, the dismissal of Count IV, like Count III, was a final and appealable order, and may now be presented to this Court for consideration.

1. Count I, paragraph 15 of appellants' complaint reads as follows: Defendant, Pennock, in direct violation of its agreement with Plaintiffs and contrary to its course of conduct and dealing in handling Plaintiffs' fire and/or hazard insurance needs, failed and/or *neglected* to keep in effect for Plaintiffs, a proper and adequate fire and/or hazard insurance policy and in concert with or as the agent, servant, workman and/or employee of Great Southwest, acting within the course and scope of its employment, deliberately, and without privilege, cause or justification, prevented, and/or refused the continuation of the aforesaid Great Southwest Insurance policy as described more fully in paragraphs twenty (20), twenty-two (22) and twenty-five (25).
(Emphasis added).

### III.

We now address those issues properly before us on appeal. As to Count III, the court below held that appellants' cause of action for punitive damages was improper. The court stated, "Pennsylvania law denies such a cause of action when sued for in insurance disputes." (Trial Court Op. at 1). The trial court opinion cites *Rodgers v. Nationwide Mutual Insurance Co.,*[2] and *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,*[3] in support of this proposition. The court in *D'Ambrosio* and this Court in *Rodgers*, relying upon *D'Ambrosio*, held that the Unfair Insurance Practices Act could not be supplemented by a judicially-created cause of action. In essence, the court in *D'Ambrosio* opined that because the Unfair Insurance Practices Act was created by the legislature, judicial interference was not appropriate. Specifically, the court stated:

> Our conclusion that the Unfair Insurance Practices Act serves adequately to deter bad faith conduct applies not only to appellant's attempt to recover punitive damages but also to his attempt to recover damages for 'emotional distress.' An award of punitive damages unquestionably is a deterrent device, see Restatement (Second) of Torts § 908 (1965); Restatement (Second) of Contracts § 369 (Tent.Draft No. 14, March 1, 1979); *one which is unnecessary in view of the present legislatively-created regulatory scheme.* And in the vast majority of cases an award of emotional distress damages would accomplish no more than is already accomplished by the Unfair Insurance Practices Act.

*D'Ambrosio*, 431 A.2d at 970. (Emphasis added).

Because the court in *D'Ambrosio* found that the Unfair Insurance Practices Act adequately covered the area of concern in such cases, it was determined that any form of judicial interference by the creation of a new cause of action would be unwarranted. However, the instant case is dis-

2. 344 Pa.Super. 311, 496 A.2d 811 (1985).
3. 494 Pa. 501, 431 A.2d 966 (1981).

similar in that Count III of appellants' complaint did not merely raise the issue of punitive damages, such that supplementation of the Unfair Insurance Practices Act would be prohibited pursuant to the holding in *D'Ambrosio*, but referred to punitive damages only as a suggested remedy to their actual claim—an action in trespass for misrepresentation, fraud and deceit. Whether appellants would be permitted to supplement their action under the Unfair Insurance Practices Act with such an existing common law action was not specifically addressed in the majority opinion of *D'Ambrosio*,[4] but was addressed in the recent case of *Pekular v. Eich*, 355 Pa.Super. 276, 513 A.2d 427 (1986). *D'Ambrosio* must be read in conjunction with *Pekular* in order to achieve an understanding of this area of the law.

In *Pekular*, authored by President Judge Cirillo, this Court held that even where the Unfair Insurance Practices Act applies, insureds may raise a common law cause of action against the insurer for fraud and deceit. In support of this contention, the court in *Pekular* relied on *Dozor Agency, Inc. v. Rosenberg*, 403 Pa. 237, 169 A.2d 771 (1961). In *Dozor*, our Supreme Court held that the precursor of the Unfair Insurance Practices Act, the Unfair Practices Act of 1947, did not provide the exclusive remedy in cases involving alleged fraudulent conduct on the part of an insurer. The Court in *Dozor* stated:

> We are of the opinion that the Act was never intended to and *does not vest exclusive* jurisdiction in the Insurance Commissioner in cases such as the present and thus oust the jurisdiction of a Court of Equity which for many

4. The approach of supplementing the Unfair Insurance Practices Act with an existing common law action of fraud and deceit was raised in *D'Ambrosio, supra,* by the insightful concurring opinion of then Justice Nix, now Chief Justice of the Supreme Court of Pennsylvania, in which he stated in part:

> I join the majority opinion but merely wish to briefly respond to the objection raised by the dissent. In addition to the deterrent provisions of the Unfair Insurance Practices Act, Act of July 22, 1974, P.L. 589, 40 P.S. §§ 1171.9 and 1171.11 (Supp.1980), appellant was also in a position to seek relief under a theory of breach of contract, or by pursuing the common law tort of deceit. (Citations omitted).
> *D'Ambrosio*, 431 A.2d at 973–4.

years has possessed and exercised jurisdiction in cases arising out of facts on all fours with the instant case.

*Dozor,* 169 A.2d at 774 cited in *Pekular,* 513 A.2d at 430. (Emphasis in original).

With the foundation laid in *Dozor* expressly denying exclusivity of such claims in the Department of Insurance, this Court in *Pekular* continued:

Finally, Eich and State Farm contend that, in any event, the allegations contained in the Pekulars' complaint do not rise to the level of fraud. After careful analysis of the allegations in the Pekulars' complaint, we find this argument to be without merit. The Pekulars have alleged that they have justifiably relied to their detriment upon allegedly intentional misrepresentations made by their insurance agent.

*Pekular,* 513 A.2d at 431. Similarly in the instant case, appellants set forth in Count III of their original complaint the following:

22. The conduct of the Defendant constitutes misrepresentation, fraud and deceit in that, *inter alia,* Defendant knowingly and willfully misrepresented to the Plaintiffs the nature, extent, terms, conditions and duration of the coverage for which Plaintiffs were paying premiums; knowingly and willfully misrepresented to the Plaintiffs the payment terms and conditions of said coverage, and/or its extension; knowingly and willfully misrepresented the terms and conditions of the policy with regard to cancellation and/or non-renewal; knowingly and willfully refused and failed to comply with the laws of the Commonwealth of Pennsylvania and the regulations of the Insurance Department of the Commonwealth of Pennsylvania with reference to cancellation and/or non-renewal of insurance coverage; knowingly and willfully refused and failed to comply with the terms and conditions of the subject insurance policy, the statutes of the Commonwealth of Pennsylvania, and the Regulations of the Insurance Department of the Commonwealth of Pennsylvania;

and otherwise violated their fiduciary, contractual and statutory duties in dealing with the Plaintiffs.

23. Plaintiffs justifiably relied upon the Defendants' misrepresentation, fraud and deceit as described aforesaid, which caused the damages to Plaintiffs described in paragraphs eight (8) and eleven (11) hereof, all of which were in the contemplation of Defendant at all times pertinent hereto, for which Plaintiff seeks the compensatory damages described in said paragraphs eight (8) and eleven (11), and punitive damages.

(Plaintiffs' Complaint at pp. 11–12).

As did the Pekulars, appellants herein have alleged that they justifiably relied to their detriment upon allegedly intentional misrepresentations made by their insurance agent. It would follow under *Pekular* that regardless of the application of the Unfair Insurance Practices Act, the insureds may, in addition, introduce a separate common law cause of action. In order to dispel any possible conflict with our Supreme Court's holding in *D'Ambrosio* that an insurer could only be subject to sanctions authorized by the Unfair Insurance Practices Act, our Court in *Pekular* clarified:

In *D'Ambrosio*, the Court expressly refused to supplement the UIPA with a judicially created cause of action which had never before been recognized by Pennsylvania courts. However, we do not read *D'Ambrosio* to preclude *existing* common law remedies such as fraud and deceit.

*Pekular*, 513 A.2d at 431. (Emphasis supplied). Based on our holding in *Pekular*, appellants must be permitted to present a separate cause of action in common law fraud and deceit. We hold that the trial court erred in dismissing Count III of appellants' complaint.

As to Count IV, the lower court, in its opinion of June 9, 1986, DiBona, J., stated:

Finally, Count IV of the Complaint is brought under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. § 201.2(4). Plaintiff relies upon

*Deetz v. Nationwide Mutual Ins. Co.*, 102 Dauph.Co., 374 (1981). This Court has not interpreted the above cited statute as providing for private attorney's general causes of action.

Accordingly, Count IV of plaintiff's complaint was properly stricken.

In light of the manner in which the trial court addressed this count, we cannot agree with its holding. Our reasoning is as follows.

First, the language of the trial court opinion is misleading. Count IV, paragraph 25 of appellants' complaint reads as follows:

25. The conduct of the Defendant in refusing to pay Plaintiffs' claim under the subject policy and in failing to provide proper and adequate insurance coverage as described aforesaid constitutes unfair or deceptive acts or practices within the meaning of Section 5 of the Unfair Insurance Practices Act, 40 Pa.Stat.Ann. Section 1171.5 (Purdon's Supplement 1981), *and/or* constitutes unfair or deceptive acts or practices within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law 73 Pa.Stat.Ann. Section 201.2(4) (Purdon's Supplement 1981), which, under Section 9.2 of the latter Act, entitles Plaintiffs to recover up to three times the actual damages caused by Defendant's unlawful conduct.

(Plaintiffs' Complaint at pp. 13–14). (Emphasis added). The effect of striking this count in its entirety is to disallow institution of an action under either the Unfair Insurance Practices Act or the Unfair Trade Practices and Consumer Protection Law. However, the opinion of the trial court refers only to the Unfair Trade Practices and Consumer Protection Law and then dismisses plaintiffs' Count IV. To state that Count IV was based on the Unfair Trade Practices and Consumer Protection Law alone is an incomplete and inaccurate assessment of the express intention of the appellants as set forth in Count IV of their complaint. It is the express language of Count IV and the effect of the trial court order dismissing that count in its entirety that we

must focus on and not merely the language of the opinion itself.

Secondly, while we would admit that the effect of this part of the trial court's opinion correctly prohibited such a cause of action under the Unfair Insurance Practices Act, as raised in Count IV, we disagree with the dismissal of this count regarding the existence of a cause of action under the Unfair Trade Practices and Consumer Protection Law.

 A cause of action initiated under the Unfair Insurance Practices Act is not an action properly within our jurisdiction. These statutory provisions are enforced by the Insurance Commissioner of the Commonwealth who is empowered to "examine and investigate the affairs of every person in this State" to determine whether the Unfair Insurance Practices Act has been violated. 40 P.S. § 1171.-7. *Pekular*, 513 A.2d at 429–30. Nor does the delegation to the insurance commissioner of authority under the Unfair Insurance Practices Act violate an insurer's due process rights. *J.C. Penney Cas. Ins. Co. v. Com. Dept. of Ins.*, 43 Pa.Cmwlth. 360, 402 A.2d 558 (1979).

In *J.C. Penney*, Penney had issued a standard "renters" policy to William and Deborah Prindle. Within a period of nineteen months, the Prindles suffered two theft losses. Following reimbursement to the insureds for the losses, the insurer notified the Prindles that due to these losses their policy would not be renewed.

The factual scenario as set forth in the opinion continued as follows:

The Prindles, pursuant to Section 5(a)(9)(iv) of the Act, 40 P.S. § 1171.–5(a)(9)(iv), requested the Department of Insurance (Department) to review Penney's action. The Department determined that there was reason to believe Penney had violated the Act, and a hearing was therefore scheduled pursuant to Section 8 of the Act, 40 P.S. § 1171.8.[2] An assistant attorney general attached to the Department was assigned by the Commissioner to act as hearing examiner. Another assistant attorney general

attached to the same office was assigned to prosecute the case on behalf of the Department.

*J.C. Penney*, 402 A.2d at 559. (Footnote omitted).

■ *Penney* exemplifies the administrative procedure to be followed where an action is initiated under the Unfair Insurance Practices Act. In the instant case, appellants sought statutory relief before the courts rather than requesting the Department of Insurance to review the action to determine whether a hearing was warranted. This act was contrary to *D'Ambrosio, supra*, and the express administrative procedure as set forth in *Penney*. Therefore, we hold that the court's dismissal of Count IV of appellants' complaint was proper with regard to the Unfair Insurance Practices Act.

■ As for the application of the Unfair Trade Practices and Consumer Protection Law, this Court recently set forth its analysis in *Pekular, supra*, in which we found that an insured could maintain a private cause of action under the Unfair Trade Practices and Consumer Protection Law even though allegations in the complaint fell within the purview of acts and practices prohibited by the Unfair Insurance Practices Act. As part of this analysis, the Court in *Pekular* specifically stated:

> We see no inconsistency between the UIPA [Unfair Insurance Practices Act] providing for administrative investigation and an imposition of limited penalties and the CPL [Unfair Trade Practices and Consumer Protection Law] providing a means by which a consumer may privately seek compensation for wrongs allegedly suffered. Our conclusion that there is no inherent irreconcilable conflict is supported by the fact that the UIPA contains no provision either stating or implying that the power vested in the Insurance Commissioner represents the exclusive means by which an insurer's unfair or deceptive acts are to be penalized or that the insured is precluded from seeking private compensation for damages incurred. Further, as noted previously, we are mindful of the fact that our Legislature did not see fit to exclude insurers,

insurance agents or insurance transactions form the broad scope of CPL regulation in either the original enactment of the CPL in 1968 or, more importantly, in its subsequent reenactment in 1976, a full two years *after* the enactment of the UIPA.

*Pekular*, 513 A.2d at 434. Consequently, we find it appropriate to follow the findings set forth in *Pekular*, and hold that the Unfair Insurance Practices Act, wherein penalties are properly enforced by the Insurance Commissioner, does not represent the sole and exclusive source of statutory redress of alleged unfair or deceptive acts of insurers and their agents. Specifically, these acts may be redressed in the courts of our Commonwealth under the Unfair Trade Practices and Consumer Protection Law as well as by administrative hearing under the Unfair Insurance Practices Act. Based on the foregoing, we therefore affirm the trial court's dismissal of Count IV with respect to the Unfair Insurance Practices Act, but reverse that part of the dismissal with respect to the Unfair Trade Practices and Consumer Protection Law and find that a private action may be so initiated.[5]

## CONCLUSION

We hold that appellants are not "out of court" as to the cause of action presented in Count II of their complaint. For that reason, the order dismissing Count II is interlocutory and not appealable. Therefore, the appeal with regard to Count II of appellant's complaint is hereby quashed.

5. The Pennsylvania Unfair Trade Practices and Consumer Protection Act, 73 P.S. 201–1 et seq., provides in section 9.2(a) as follows:
 **§ 201–9.2 Private actions**
 (a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act,[1] may bring a private action, to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper.
 (Footnote omitted).

However, we hold that appellants are "out of court" as to the causes of action presented in Counts III and IV of their complaint. Since the trial court order dismissing Counts III and IV is final and appealable, it is properly before this Court for appellate review. We find on the basis of this Court's holding in *Pekular, supra,* that the trial court has improperly dismissed appellants' common law cause of action in Count III and appellants' cause of action pursuant to the Unfair Trade Practices and Consumer Protection Law in Count IV. Therefore, the order of the trial court with respect to Count III is reversed and with respect to Count IV is affirmed in part, and reversed in part as aforementioned. Jurisdiction is relinquished.

DEL SOLE, J., filed a concurring statement.

DEL SOLE, Judge, concurring:

I join the analysis of the majority in its opinion. I write separately however to express my disagreement with the existing case law relative to what constitutes a "final and appealable order".

First, I hasten to add that I believe that the majority's analysis of counts two, three and four and the dismissal thereof is correct under existing case law. I believe that the existing case law should be re-examined and the concept "out of court" should be reassessed.

An order dismissing various counts in a multi-count complaint, or an order refusing to allow the amendment of an answer, new matter, or counterclaim, does not put a litigant out of court. Rather, it postpones the litigants right to have that issue reviewed until a later date.

I would point out that I believe that the doctrine contained in *Praisner v. Stocker,* 313 Pa.Super. 322, 459 A.2d 1255 (1983) and *Cloverleaf Development Inc. v. Horizon Financial F.A.,* 347 Pa.Super. 75, 500 A.2d 163 (1985) should be re-examined.

In my view the better practice would be to disallow appeals from any order that occurs during the course of

litigation at the trial level until a party has been totally dismissed from the case or the case is ended for *all* purposes at the trial court level. The only exceptions to this rule should be those enumerated in Pa.R.A.P. 311 or where the postponement of review would cause the claimed right to be irrevocably lost. *See: Bell v. Consumer Discount Company,* 465 Pa. 225, 348 A.2d 734 (1975). The present status of the law in this area is confusing to say the least. Further, our appellate courts have held that the failure to appeal one of these misnomered "final and appealable orders" results in a loss of the right to have the trial court action reviewed if not immediately appealed. *Mineo v. Tancini,* 349 Pa.Super. 115, 502 A.2d 1300 (1986). *See: Fidelity Bank v. Duden,* 361 Pa.Super. 124, 521 A.2d 958 (1987) (dissenting Opinion by Del Sole, J.). This in and of itself invites cautious counsel, when faced with the difficult question of determining whether or not an order is "appealable", to take the appeal, delay the litigation at the trial level and further burden the appellate courts of Pennsylvania.

Further, the application of the rule of "final and appealable" is inconsistent. As an example, an order striking the affirmative defense raised in a new matter which alleges forgery of a document would be "final and appealable" for interlocutory appeal purposes. However, a trial court's ruling during trial disallowing expert testimony to establish the fact of that forgery is not "final and appealable". In either event the result to the litigant is the same and in both cases the review of the respective orders can be postponed until the conclusion of the actions at the trial court level. Further support for this view is gained by the recent decision of the Pennsylvania Supreme Court in *Bruno v. Elitzky,* 515 Pa. ——, 526 A.2d 781 (1987) where that court, speaking through Mr. Justice Papadakos, held that the dismissal of new matter as a result of a sanction order entered pursuant to the discovery rules is not a final and appealable order, but rather an interlocutory one, the review of which can await the final outcome of the litigation.

It must be pointed out that the concept that a litigant is "out of court" with regard to a particular issue is a misnomer. Actually, the litigant is not out of court but in fact still "in court" merely having the right to review of the subject issue postponed.

Believing as I do that a definition of what is an "appealable nonlitigation ending order" is difficult and creates traps to litigants and their lawyers alike, that area of the law should be re-evaluated and changed. However, I conclude that the majority in this case has properly analyzed the existing case law, and therefore I am constrained to join the opinion of my learned colleague Judge Kelly.