Mark KLINGER, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Defendant.

Linda NEYER, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Defendant.

Civ. A. Nos. 1:CV–94–1393, 1:CV–94–1469.

United States District Court,
M.D. Pennsylvania.

Aug. 21, 1995.

David L. Lutz, Harrisburg, PA, for plaintiff.

Robert E. Kelly, Jr., Matthew Chabal, III, Duane, Morris & Heckscher, Harrisburg, PA, David J. Battisti, Duane, Morris & Heckscher, Harrisburg, PA, for defendant.

## MEMORANDUM

CALDWELL, District Judge.

These cases involve claims against an insurer in connection with its handling of Plaintiffs' insurance claims. We are considering the Defendant's motions for summary judgment, as well as each Plaintiff's motion for partial summary judgment. The issues raised in each action are nearly identical and, therefore, we will address the motions together insofar as possible.

### I. *Background*

The factual background is not in dispute. However, a detailed discussion of the facts is necessary for a proper understanding of these actions.

On August 7, 1992, the Plaintiffs were injured in an automobile accident. The accident involved Klinger's van, in which Neyer was a passenger, and another vehicle. Klinger had two automobile policies with State Farm Mutual Automobile Insurance Company ("State Farm"). One policy insured the vehicle involved in the accident and the other insured a motorcycle. The driver of the other vehicle was insured by Allstate Insurance Company ("Allstate"). Allstate tendered its policy limits to the Plaintiffs, but the amount was insufficient to cover their injuries. Therefore, each Plaintiff submitted a claim under Klinger's UIM coverage.

Klinger's policy provided that disputes as to coverage and damages be submitted to arbitration. An issue concerning the amount of UIM coverage under Klinger's policy arose, and the parties agreed to bifurcate the coverage and damage issues. On October 27, 1993, an arbitration hearing was conducted to determine the amount of UIM coverage. At the hearing, State Farm was represented by counsel. The board of arbitrators determined that the aggregate UIM coverage was

$100,000 on Klinger's policy covering the vehicle involved in the accident and $15,000 on his policy covering the motorcycle. On November 1, 1993, and again on November 22, 1993, Plaintiffs' counsel sent correspondence to State Farm's attorney, demanding a tender of the policy limits.

However, counsel failed to notify State Farm of the arbitrators' decision and of the letters of demand from Plaintiffs. In fact, from November 18, 1993 to January 20, 1994, a State Farm claims representative, Timothy Spader, attempted unsuccessfully to reach its counsel in order to determine whether a decision had been reached on the coverage question. On January 20, 1994, in a conversation between Spader and Plaintiffs' attorney concerning another matter, Spader learned of the October 27, 1993 arbitration decision.[1] The next day, Plaintiffs' counsel sent Spader a copy of the arbitrators' coverage award, along with copies of his November 1 and 22 letters to State Farm's attorney, and offered to supply State Farm with medical and work loss records for each Plaintiff.

On February 3, 1994, State Farm's counsel finally informed Spader of the arbitration result, and advised that a letter detailing the status of the case would follow. When no letter had been received by February 23, 1994, Spader went to the office of State Farm's attorney and obtained the Plaintiffs' medical records, which allegedly amounted to only five pages. On February 24, 1994, State Farm requested that Plaintiffs' counsel provide all of Plaintiffs' medical and work loss records.[2] On March 18, 1994, in a letter to counsel, the board of arbitrators scheduled a hearing for June 28, 1994 to determine damages. The letter was not sent to State Farm.

Throughout April and May, 1994, various correspondence and documents were exchanged between Plaintiffs' attorney and Edward T. McMerty, who had replaced Spader. During this time, State Farm's counsel had not informed it that the hearing on damages had been set. On May 18, 1994, McMerty completed his evaluation and recommended that State Farm tender policy limits to Klinger.[3] On June 22, 1994, the State Farm claims superintendent contacted its counsel in connection with completing a claim committee report. She was informed, for the first time, that the arbitration hearing on damages was scheduled for June 28, 1994. State Farm then made an unsuccessful attempt to continue the arbitration hearing. The arbitrators determined that Klinger's damages were $380,000, and therefore awarded him the policy limits of $115,000. They also determined that Neyer's damages were $85,000, and, after deducting $15,000 received from Allstate, awarded her $70,000. State Farm produced no witnesses and introduced no evidence at the hearing.

On August 2, 1994, the amount owed to each Plaintiff was sent to their counsel. Klinger instituted this action on August 3, 1994 in the Dauphin County Court of Common Pleas, and it was removed here on August 30, 1994. Neyer's claim was filed in state court on August 12, 1994, and removed here on September 14, 1994.[4]

## II. *Law and Discussion*

### A. *Standard for Summary Judgment*

Summary judgment is appropriate "if the pleadings, depositions, answers to interroga-

---

1. According to Plaintiffs' counsel, Spader was "shocked" when informed of the decision. [Def.'s Statement of Material Facts at ¶ 22]. It is undisputed that prior to that date, State Farm's counsel had never informed it of the arbitrators' decision. [Def.'s Statement of Material Facts at ¶ 23].

2. State Farm received at least some of these records on March 1, 1994, but the parties disagree as to when it received all records. There is no dispute that State Farm itself had not received any records prior to March, 1994. However, Plaintiffs claim that the reports were sent to State Farm's counsel in November, 1993, while State Farm denies that fact.

3. McMerty's recommendation with respect to Neyer was not completed until June 22, 1994. It is unclear what amount he recommended, although he stated that her losses were "considerably less" than Klinger's. [Def.'s Statement of Material Facts at ¶ 55].

4. A review of the record indicates that, after the actions were removed here, State Farm failed to respond to Plaintiffs' complaints and it does not appear that answers were filed in state court prior to removal. Plaintiffs did not object to State Farm's failure to respond to the complaints.

tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986). Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted).

When a moving party has carried his or her burden under Rule 56, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts...." *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted). The nonmoving party "must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment", and cannot "simply reassert factually unsupported allegations contained in [the] pleadings." *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (emphasis in original) (citation omitted). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986) (internal citations omitted).

### B. *Plaintiffs' Motions for Partial Summary Judgment*

■ In their motions for partial summary judgment, Plaintiffs seek a ruling that State Farm's counsel's

neglect, if any, is binding upon Defendant State Farm and, therefore, Defendant State Farm cannot call Attorney Robert Davis to offer an expert opinion that [counsel's] neglect is not binding upon Defendant State Farm.

[Pls.' Motions for P.S.J. at 3]. However, as State Farm points out, Plaintiffs' motions are not proper under Fed.R.Civ.P. 56. Rather, they are motions *in limine.*

In any event, the motions must be denied. Plaintiffs wish to prevent State Farm's expert from testifying on the subject of State Farm's reliance on its counsel. That testimony is clearly admissible. As is set forth more fully, *infra,* Plaintiffs must establish that State Farm's failure to make a settlement offer prior to the June 28, 1994 arbitration hearing was unreasonable and that State Farm knew its decision had no reasonable basis, or that it recklessly disregarded that fact. Thus, State Farm's expert should be permitted to testify about State Farm's handling of Plaintiffs' claims.

■ As to Plaintiffs' arguments concerning the law of agency, we agree with State Farm that, for purposes of a bad faith claim pursuant to 42 Pa.C.S.A. § 8371, we must look solely to the conduct of the insurer for failure to pay benefits: was State Farm's conduct unreasonable, and if so, did it know or recklessly disregard that fact. The jury could determine that State Farm's reliance on its counsel was reasonable, and thus its failure to offer benefits was also reasonable. On the other hand, the jury could conclude that State Farm's reliance on counsel was unreasonable and, in fact, that its conduct was reckless. Therefore, Plaintiffs' motions for partial summary judgment will be denied.

### C. *Defendants' Motions for Summary Judgment*

#### 1. Breach of Contract

In each case, the Plaintiffs advance a claim for breach of contract. State Farm argues that because the amount due Plaintiffs, as determined by the arbitrators, was paid in full, no action for breach of contract can exist.

In Klinger's complaint, he argues that State Farm breached the contract by: (1) failing to pay him benefits due under the policy; and (2) failing to offer any benefits prior to the arbitration hearing on damages. Neyer's complaint contains only the second allegation. Because it is clear that payment

was received by the Plaintiffs, we need only consider whether State Farm's failure to offer and/or pay *any* amount prior to the arbitrators' decision was a breach of contract.

■ We have examined Klinger's insurance policy, as well as the relevant contract law, and are unable to conclude that State Farm's failure to pay prior to the arbitrators' decision amounted to a breach of the parties' contract. Plaintiffs have not cited a single case to support such a theory. The policy provided that an arbitration panel would decide the amount due under the policy, which occurred on June 28, 1994, and Plaintiffs received payment due on August 2, 1994.

The contract did not require State Farm to pay money prior to the arbitrators' decision. While it is not disputed that State Farm had a duty to deal in good faith, that obligation was independent of its contractual duties. Accordingly, Plaintiffs' breach of contract claims will be dismissed.

### 2. Bad Faith

■ Plaintiffs assert claims for bad faith pursuant to 42 Pa.C.S.A. § 8371, which provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%;
>
> (2) Award punitive damages against the insurer;
>
> (3) Assess court costs and attorneys fees against the insurer.

42 Pa.C.S.A. § 8371. To succeed on a claim under section 8371, the insured must establish the insurer's bad faith by "clear and convincing evidence." *Terletsky v. Prudential Property & Casualty Insurance Co.*, 437 Pa.Super. 108, 125, 649 A.2d 680, 688 (1994) (citations omitted), *appeal denied*, 540 Pa. 641, 659 A.2d 560 (1995). Although the term

"bad faith" is not defined in the statute, the courts have applied the following:

> "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Id.* (citing Black's Law Dictionary 139 (6th ed. 1990)). Because State Farm raises different arguments with respect to each Plaintiff, we will address Klinger and Neyer's claims separately.

#### a. Klinger

State Farm contends that Klinger's bad faith claim must be dismissed as a matter of law because: (1) he cannot establish that State Farm acted unreasonably in failing to offer the policy limits prior to the arbitration decision; and (2) he cannot establish that State Farm acted with some dishonest purpose or ill-will.

■ A plaintiff pursuing a claim under section 8371 must prove that an insurer did not have a reasonable basis for denying a claim. State Farm contends that its failure to tender the policy limits prior to the arbitration hearing was reasonable because it performed its evaluation of the claim within a reasonable time after it received the necessary medical documents. It claims that it did not receive the documents until May, 1994, and that its evaluation was completed within two weeks.[5] State Farm also asserts that, in completing her final report on June 22, 1994, its claim superintendent acted reasonably after receiving the evaluation and recommendation from its claim analyst. While the facts set forth by State Farm may be accurate, the issue of whether such conduct was reasonable must be resolved by a jury.

**5.** Klinger argues that all necessary documents were supplied to State Farm's counsel in November, 1993, and that offers to supply the materials directly to State Farm were made as early as January, 1994.

State Farm also argues that even if its conduct was unreasonable, Klinger cannot establish that it acted with an improper motive, and that mere negligence or bad judgment are insufficient to amount to bad faith. Klinger contends that he can succeed on his claim by establishing State Farm's "reckless disregard" for his interests. There is no dispute that negligence, even gross negligence, cannot support a finding of bad faith. *See Terletsky,* 437 Pa.Super. at 125, 649 A.2d at 688. The question, however, is whether "recklessness" can support such a finding.

Klinger sets forth a two-part test for determining whether an insurer acted in bad faith: (1) whether the insurer had a reasonable basis for denying/delaying the insured's claim; and if so (2) whether it knew or recklessly disregarded any lack of a reasonable basis. State Farm argues that Klinger "misstates the controlling test for establishing insurer bad faith" [Def.'s Reply Br. at 7], and identifies a three-part test for ascertaining whether there was bad faith: (1) whether the insurer had a reasonable basis for denying/delaying the insured's claim; (2) if so, whether it knew or recklessly disregarded any lack of a reasonable basis; and (3) whether the insurer's actions were motivated through self-interest or ill-will. Upon review of the relevant case law we conclude it is State Farm that is mistaken in its interpretation of the test for bad faith under section 8371.

The courts applying section 8371 have consistently cited the definition of "bad faith" set forth in Black's Law Dictionary, *supra.* In addition, courts have consistently held that "reckless behavior can constitute bad faith." *Polselli v. Nationwide Mutual Fire Insurance Co.,* 23 F.3d 747, 751 (3d Cir.1994); *see also Terletsky,* 437 Pa.Super. at 125, 649 A.2d at 688; *Serubo v. Home Insurance Co.,* No. 95–3207, 1995 WL 461274, \* 1 (E.D.Pa. August 3, 1995); *Younis Brothers, Inc. v. Cigna World Wide Insurance Co.,* No. 91–6784, 1995 WL 118211, \* 2 (E.D.Pa. March 10, 1995); *Montgomery v. Federal Insurance Co.,* 836 F.Supp. 292, 298 (E.D.Pa.1993). State Farm's contention reveals a misunderstanding of the term "reckless", as used in connection with section 8371. Further, State Farm fails to distinguish the definition of bad faith from the test developed by the courts to ascertain whether it exists.

In *Polselli, supra,* the Third Circuit distinguished two contexts in which "reckless" is used. In discussing a case decided by the Pennsylvania Supreme Court, *Martin v. Johns–Manville Corp.,* 508 Pa. 154, 494 A.2d 1088 (1985), the court stated that:

> *Martin* distinguished between two distinct types of reckless conduct. The court held that punitive damages are appropriate where a defendant knows, or has reason to know, of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act in conscious disregard of, or indifference to that risk. However, where the defendant does not realize or appreciate the high degree of risk, even though a reasonable person would, punitive damages are inappropriate. Thus Nationwide contends that *Martin* stands for the proposition that reckless behavior cannot support a finding of bad faith. *Martin,* however, is inapposite.

*Polselli,* 23 F.3d at 751 (internal citations omitted). The court in *Polselli* went on to hold that the district court did not err in concluding that the former type of reckless behavior (where the defendant deliberately acts in conscious disregard of, or with indifference to the rights of the insured) can constitute bad faith. *Id.* The Pennsylvania Superior Court recently defined the test for bad faith under section 8371 as follows:

> to recover under a claim of bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim.

*Terletsky,* 437 Pa.Super. at 125, 649 A.2d at 688; *see also Younis,* 1995 WL 118211, at \* 2.

The additional "element" that State Farm attempts to interject, a showing of improper purpose or ill-will, is inconsistent with the two-part test set forth in *Terletsky.* Contrary to State Farm's argument, an insured need not show *both* ill-will and recklessness. Rather, the degree of recklessness

required to succeed on such a claim in effect rises to the level of "improper purpose". *See Polselli,* 23 F.3d at 751. Thus, "reckless behavior can constitute bad faith." *Id.* In this case, a jury might conclude that State Farm's failure to make an offer of settlement prior to the June 28, 1994 arbitration hearing was unreasonable, and that it knew of, or recklessly disregarded, that fact. For these reasons, State Farm's motion for summary judgment on Count II of Klinger's complaint must be denied.

### b. Neyer

■ State Farm seeks dismissal of Neyer's bad faith claim because: (1) she lacks standing; (2) she cannot establish that State Farm acted unreasonably in failing to offer the policy limits prior to the last arbitration hearing; and (3) she cannot establish that State Farm acted with some dishonest purpose or ill-will.

State Farm contends that Neyer's claim of bad faith must be dismissed for lack of standing. Section 8371 provides that the court may award damages against an insurer if it "finds that the insurer has acted in bad faith toward the *insured.*" 42 Pa.C.S.A. § 8371 (emphasis added). Because the statute does not define "insured", we look to the Pennsylvania rules of statutory construction, which provide that words and phrases "shall be construed ... according to their common and approved usage...." 1 Pa.C.S.A. § 1903. The term "insured" has a straightforward and common sense meaning:

> [t]he person who obtains or is otherwise covered by insurance on his health, life, or property. The "insured" in a policy is not limited to the insured named in the policy, but applies to anyone who is insured under the policy.

Black's Law Dictionary 808 (6th ed. 1990) (citations omitted). Klinger's insurance policy defines an "insured" under the policy as:

1. the first **person** named in the declarations;
2. his or her **spouse**;
3. their **relatives**;

4. any other **person** while occupying:

    a. **your car**.... Such vehicle has to be used within the scope of the consent of **you** or **your spouse**....

[Exh. F to Neyer's Motion for S.J.] (emphasis in original).

State Farm argues that because Neyer was a passenger in Klinger's vehicle, rather than the owner of the policy, the insurer's duty of good faith and fair dealing that underlies section 8371 does not apply to her. In our opinion it defies logic, as well as the intent of the statute, to permit only those individuals who actually purchase insurance from maintaining an action against the insurer. An insurer's duty to deal in good faith applies to all persons who are "insured" under the policy. *Dercoli v. Pennsylvania National Mutual Insurance Co.,* 520 Pa. 471, 476–77, 554 A.2d 906, 909 (1989) (insurer bound to act in good faith toward wife of policyholder where she was an "insured" under the insurance policy). There is nothing in the statute that would support State Farm's narrow reading of its terms.[6] Rather, the statute provides a cause of action against an insurer who acts in bad faith with respect to an "insured", and the language means precisely what it says: the duty runs to one covered under the insurer's policy of insurance.

■ State Farm relies on the Superior Court's decision in *Strutz v. State Farm Mutual Insurance Co.,* 415 Pa.Super. 371, 609 A.2d 569 (1992), *appeal denied,* 532 Pa. 657, 615 A.2d 1313 (1992), to support its argument that Neyer does not have standing. However, *Strutz* is factually distinguishable from the case at bar, and in fact, its language supports our conclusion that Neyer has standing. In *Strutz,* the plaintiffs were injured in an automobile accident. They filed suit against the tortfeasor's insurance company under section 8371, alleging that the insurer acted in bad faith in failing to negotiate and settle their claims. The trial court sustained the defendant's demurrer because plaintiffs, as alleged third-party beneficiaries, had no cause of action against the insurer.

6. If the drafter's intended only to create a cause of action for the purchasers of insurance, they could have used the term "named insured" rather than the more general term "insured".

On appeal, the plaintiffs argued that they were third-party beneficiaries to the policy, and therefore were "insureds" under that policy. The court stated that

> the duty to negotiate a settlement in good faith arises from the insurance policy and is owed to the insured, not to a third-party claimant. By asserting its policy right to handle all claims, the insurer assumes a fiduciary position toward the insured and becomes liable to act in good faith and with due care in representing the interests of the insured.

*Strutz*, 415 Pa.Super at 375, 609 A.2d at 571. Further, in distinguishing *Dercoli, supra*, the court opined that in *Dercoli*

> the court found the insurance company's duty to deal in good faith with the injured party arose from the fact the injured party was the wife of the insured, and, herself, an insured under the policy. Dercoli did not recover on the basis of the defendant insurance company's duty to bargain with a claimant other than the insured.

*Id.* Thus, the duty to deal in good faith includes both the policyholder and other "insureds" under that policy. In this case, that would include Klinger's spouse, his relatives, and any occupant of his vehicle, such as Neyer. [Exh. F. to Neyer's Motion for S.J.]. Therefore, Neyer has standing to assert a claim of bad faith by State Farm through its failure to pay her benefits in a timely fashion.[7]

Next, State Farm argues that Neyer cannot establish that it acted unreasonably in failing to pay the policy limits prior to the June 28, 1994 hearing. It contends that because the arbitrators awarded $70,000, rather than the $100,000 policy limit demanded by Neyer, its actions were reasonable as a matter of law. In support, State Farm relies upon the decision in *Kauffman v. Aetna Casualty & Surety Co.*, 794 F.Supp. 137 (E.D.Pa.1992), where the court held, as a matter of law, that the insurer's decision to proceed to arbitration was not unreasonable

because the arbitrators awarded $950,000 instead of the $1,000,000 policy limits.

In *Kauffman*, the plaintiffs sought the policy limit of $500,000, plus $500,000 through "stacking" of the policy. Aetna filed a declaratory judgment action to determine if stacking was permitted. The district court held that stacking was permitted, and Aetna sought to appeal to the Third Circuit. It offered the insureds the $500,000 policy limit, without prejudice to the remaining amount of their claim, while the Third Circuit resolved the stacking issue. The plaintiffs accepted the offer. After the arbitrators determined that the plaintiffs were entitled to an additional $450,000, the Third Circuit upheld the district court's decision that stacking was permitted. Aetna then paid the remaining $450,000.

Neyer contends that *Kauffman* is distinguishable because the insurer offered $500,000 to the plaintiffs in that case, while in this case no offer was ever made. State Farm argues that we should ignore the $500,000 payment and look only to the following facts from *Kauffman*: the defendants failed to pay any portion of the remaining $500,000 upon the plaintiffs' demand; the arbitrators ultimately awarded less than $500,000; and the court held as a matter of law that there was no bad faith because the arbitrators awarded less than the plaintiffs demanded. However, State Farm ignores the fact that the defendants in *Kauffman* offered *something* to the plaintiffs (one-half of their demand), even though they disputed some of plaintiffs' future wage losses.

Also, Aetna's failure to offer any part of the remaining $500,000 in *Kauffman* stemmed from the fact that the stacking issue, if resolved in its favor, would have relieved it from paying any additional money. Thus, Aetna was validly disputing its obligation to pay *the entire* $500,000. The court properly recognized the danger to Aetna of paying the money prior to its appeal, noting that "if Aetna had permitted the arbitration award to become final by paying the amount

---

7. We find unpersuasive State Farm's analogy to cases involving the "stacking" of benefits by occupants in an insured's vehicle. *See Utica Mutual Insurance Co. v. Contrisciane*, 504 Pa. 328, 473

A.2d 1005 (1984); *General Accident Insurance Co. v. St. Peter*, 334 Pa.Super. 6, 482 A.2d 1051 (1984).

of the award, it is open to question whether Aetna could have recovered the excess amount had the Third Circuit ultimately decided the stacking issue in Aetna's favor." *Kauffman,* 794 F.Supp. at 141.

Here, however, there was no pending legal issue that would have relieved State Farm of any part of its obligation to pay Neyer. State Farm did not contest its duty to pay Neyer's damages, but only the amount of her damages.[8] We conclude that, under the facts presented here, the arbitration panel's decision to award less than the policy limits did not render State Farm's decision not to offer any settlement *per se* reasonable.

State Farm further argues that its conduct was reasonable as a matter of law because it was "unaware of lack [sic] of the June, 1994 hearing", and because "there is no evidence that State Farm ever intended not to make an offer, it just was unable to do so under the circumstances." [Def.'s Br. in Support of S.J. at 13]. Even assuming the facts alleged by State Farm are true, they do not conclusively establish that its conduct was reasonable. State Farm's failure to inquire of its counsel about the status of the damages hearing, and/or its reliance on its counsel—in light of counsel's apparent dilatory conduct after the coverage hearing—could be construed by a jury to have been unreasonable.

State Farm also asserts that even if we determine that it acted unreasonably, Neyer is unable to prove that it had a "dishonest purpose, improper motive or ill-will." However, as set forth above with respect to Klinger's claim, a jury could conclude that State Farm had no reasonable basis for denying Neyer's claim and that it knew or recklessly disregarded the fact that it had no such basis. *Terletsky,* 437 Pa.Super. at 125, 649 A.2d at 688. State Farm's motion for summary judgment on Neyer's bad faith claim must be denied.[9]

### 3. Unfair Trade Practices

Klinger's complaint also contains a claim under the Unfair Trade Practices and Consumer Protection Law ("CPL"), 73 P.S. § 201–1. He contends that

> State Farm's conduct and actions constitute unfair and deceptive practices that created a likelihood of confusion or misunderstanding on the part of Klinger and other insureds.

[Klinger Compl. ¶ 36]. State Farm argues that Klinger's claim is improper because: (1) he is attempting to sue State Farm under the CPL for an alleged violation of the Unfair Insurance Practices Act ("UIPA"), 40 P.S. § 1171.1, which is not permitted under established state law; and (2) he alleges only nonfeasance (failure to timely offer benefits), rather than the misfeasance required under the CPL. Klinger counters that he is not proceeding under the UIPA, and that State Farm's reckless handling of his claim "constituted the improper performance of a contractual obligation, i.e., misfeasance, and thus actionable under the [CPL]." [Klinger Br. in Opp'n at 6].

After careful review of the law in Pennsylvania regarding an insured's ability to pursue a CPL action against an insurer, we conclude that Klinger's claim must be dismissed. It is well established that an insurer's refusal to pay benefits to an insured is nonfeasance, and not actionable under the CPL. *See, e.g., Gordon v. Pennsylvania Blue Shield,* 378 Pa.Super. 256, 263, 548 A.2d 600, 602 (1988); *Horowitz v. Federal Kemper Life Assur. Co.,* 57 F.3d 300, 307 (3d Cir. 1995); *MacFarland v. U.S. Fidelity & Guarantee Co.,* 818 F.Supp. 108, 111 (E.D.Pa. 1993); *Riddell v. State Farm Fire & Casualty Co.,* No. 91–1461, 1992 WL 209971, * 7 (M.D.Pa. July 9, 1992) (McClure, J.); *Lombardo v. State Farm Mutual Automobile Insurance Co.,* 800 F.Supp. 208, 213 (E.D.Pa.

**8.** Prior to June 22, 1994 (six days before the hearing), State Farm had not determined how much it believed Neyer was entitled to.

**9.** State Farm also contends that Plaintiffs have not demonstrated that State Farm acted in an "intentional, willful, wanton, reckless and outrageous manner," and therefore should be foreclosed from recovering punitive damages. However, a jury could conclude that State Farm acted with "reckless indifference to the rights of others", which is sufficient to warrant punitive damages. *Feld v. Merriam,* 506 Pa. 383, 395, 485 A.2d 742, 747–48 (1984) (citing Restatement (Second) of Torts § 908(2)).

1992). Klinger does not dispute this rule. Rather, he argues that he has alleged more than mere nonfeasance, to wit, that the reckless handling of his insurance claims amounted to misfeasance. However, regardless of the language used by Klinger to describe State Farm's conduct, the allegation is the same: he is challenging State Farm's failure to pay insurance benefits in a timely fashion. Such failure to pay is not actionable under the CPL. *See id.* Summary judgment is appropriate in favor of State Farm on Count III of Klinger's complaint.[10]

We will issue an appropriate Order.[11]

### ORDER

AND NOW, this 21st day of August, 1995, it is ordered that:

1. Plaintiff's motion for partial summary judgment in case number 1:CV–94–1393, filed July 5, 1995, is denied.

2. Plaintiff's motion for partial summary judgment in case number 1:CV–94–1469, filed July 5, 1995, is denied.

3. Defendant's motion for summary judgment in case number 1:CV–94–1393, filed July 5, 1995, is granted in part and denied in part. The motion is granted as to Counts I, III, and IV, but denied with respect to Count II. The Clerk of Court shall enter judgment in favor of the Defendant on Counts I, III, and IV.

4. Defendant's motion for summary judgment in case number 1:CV–94–1469, filed July 5, 1995, is granted in part and denied in part. The motion is granted as to Count I, but denied with respect to Count II. The Clerk of Court shall enter

judgment in favor of the Defendant on Count I.

---

**10.** State Farm also argues that Klinger's claim is one that falls within the UIPA, and that we therefore lack jurisdiction to decide it. While an insured cannot use a violation of the UIPA as the underlying basis for a claim under the CPL, *Parasco v. Pacific Indem. Co.,* 870 F.Supp. 644, 647 (E.D.Pa.1994), there may be instances when an insured can maintain a cause of action under the CPL against an insurer, even when the alleged conduct would arguably be covered by the UIPA. For example, if the insurer engaged in misrepresentation that "rises to the level of an unfair or deceptive act or practice as defined under 73 P.S. § 201–2(4) of that law", the insured could bring suit pursuant to the CPL. *Gordon,* 378 Pa.Super. at 264, 548 A.2d at 603; *see*

*also Hardy v. Pennock Insurance Agency, Inc.,* 365 Pa.Super. 206, 221, 529 A.2d 471, 479 (1987); *Pekular v. Eich,* 355 Pa.Super. 276, 290, 513 A.2d 427, 434 (1986), *appeal denied,* 516 Pa. 635, 533 A.2d 93 (1987); *but see Riddell,* 1992 WL 209971, at * 7 (rejecting *Pekular*). However, because Klinger's claim is fundamentally flawed, we need not consider whether it would be foreclosed by the UIPA.

**11.** Count IV of Klinger's complaint is a claim for fraud and misrepresentation. In his response to State Farm's motion for summary judgment, Klinger agreed to voluntarily withdraw that claim.