**YOUNIS BROTHERS &
COMPANY, INC.**

v.

**CIGNA WORLDWIDE INSURANCE CO.**

Civ. A. No. 91–6784.

United States District Court,
E.D. Pennsylvania.

Nov. 16, 1994.

John J. Seehousen, Langhorn, PA, for plaintiff.

Stephen A. Cozen, David R. Strawbridge, Douglas R. Widin, Elizabeth J. Chambers, Philadelphia, PA, for defendant.

## MEMORANDUM

O'NEILL, District Judge.

### I. Procedural History

On October 30, 1991, plaintiff Younis, a Liberian corporation, filed its complaint against defendant CIGNA. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiff alleged that defendant breached a pair of fire insurance policies which defendant issued to plaintiff. Counts I through III sought compensatory damages for breach of the policies, which concerned three locations in Liberia. In Count IV, plaintiff alleged:

64. As of the commencement of this action, CIGNA has made no offer to Younis Bros. for any of the losses it suffered in Liberia in August of 1990.

65. CIGNA has acted in bad faith in its adjustment of Younis Bros.'s claim.

66. CIGNA has acted in bad faith in its investigation of Younis Bros.'s claim.

\* \* \* \* \* \*

68. Because of CIGNA's bad faith, Younis Bros. is entitled to an award of interest, counsel fees, punitive damages in accordance with Pennsylvania law, 42 Pa.C.S.A. § 8371.

In its answer, defendant denied plaintiff's allegations of bad faith and asserted affirmative defenses against plaintiff's bad faith claim.

Defendant contended that Count IV failed to state a claim "because application of the statute would be a constitutionally impermissible extraterritorial application of Pennsylvania law" violating the Commerce Clause of and due process rights guaranteed by the

United States Constitution;[1] "because the statute violates guarantees of due process ... by failing to adequately to inform those against whom it may be applied of the conduct or actions it prohibits and/or penalizes;"[2] because the statute allows "the imposition of punitive damages without adequate substantive and procedural guidelines and protections;"[3] and because the statute violates "rights of trial by jury afforded by the United States Constitution and Pennsylvania Constitution."[4]

Plaintiff subsequently filed an amended complaint setting forth additional factual allegations and repeating its assertion that defendant acted in bad faith in its investigation and adjustment of plaintiff's losses. In its answer, defendant denied those allegations, incorporated by reference the affirmative defenses asserted in its earlier answer.[5] During the pretrial phase, the Court consolidated this case with a related case, *The Abi Jaoudi and Azar Trading Corporation v. Cigna Worldwide Insurance Company*, Civil Action No. 91–6785.

Trial in both cases began on February 7, 1994. The Court divided the cases into phases. In phase one, the jury found that plaintiffs' suits were not barred by the war risk exclusion clauses in the various insurance policies.

In phase two, which concerned a number of affirmative defenses arising out of provisions in the insurance policies, the jury found in favor of plaintiffs on all questions except that it could not reach a decision with respect to the affirmative defense of fraud asserted against plaintiff Abi Jaoudi and Azar Trading Corporation ("AJA").

The Court therefore discontinued proceedings in the *AJA* case and resumed proceedings in the *Younis* case. Because the parties did not dispute the amount of compensatory damages claimed by Younis, the Court did not hear any evidence relevant to phase three.

With respect to phase four, the parties disputed the definition of the term "court" in section 8371. Defendant asserted that the term "court" referred only to the trial judge while plaintiff argued that the term meant "judge and jury." I did not resolve this dispute but felt constrained by the Seventh Amendment to submit to the jury the questions whether defendant acted in bad faith, whether its conduct was outrageous and whether plaintiff was entitled to an award of punitive damages. *See* Transcript, April 6, 1994, at 112–116.

The jury determined that defendant acted in bad faith towards plaintiff. This required phase five, in which the jury found that defendant's conduct was not outrageous. Accordingly, the jury was not required to consider an award of punitive damages to plaintiff.

At a post-trial hearing, I requested that the parties brief the question of whether section 8371 is constitutional. *See* Transcript, May 13, 1994, at 36–38. Comprehensive briefs were submitted and oral argument was held on August 18.

For the following reasons, I conclude that section 8371 is constitutional. I also conclude that in a federal court action pursuant to section 8371 a party is entitled to a jury trial with respect to a claim for punitive damages but is not entitled to a jury trial with respect to the other remedies available under the statute.

II.  Discussion

A.  Section 8371

In *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company*, 494 Pa. 501, 431 A.2d 966 (1981), the Pennsylva-

1. *See* Answer, filed December 18, 1991, at ¶¶. 124, 125. On October 15, 1993, I issued a Memorandum and Order denying defendant's motion for partial summary judgment based on this defense.

2. *See* Answer, filed December 18, 1991, at ¶. 127.

3. *See* Answer, filed December 18, 1991, at ¶. 128.

4. *See* Answer, filed December 18, 1991, at ¶. 129.

5. *See, e.g.,* Order dated January 9, 1992 (consolidating cases for discovery); Order dated August 20, 1993, Civil Action No. 91–6785 (reassigning *AJA* case to Judge O'Neill as related to *Younis Brothers* case).

nia Supreme Court held that there is no common law action for bad faith conduct by an insurer. The Court stated that there "is no evidence to suggest, and we have no reason to believe, that the system of sanctions established under the Unfair Insurance Practices Act must be supplemented by a judicially created cause of action." *Id.*, 431 A.2d at 970. The Court added that "it is for the Legislature to announce and implement the Commonwealth's public policy governing the regulation of insurance carriers" and "to determine whether sanctions beyond those created under the Act are required to deter conduct which is less than scrupulous." *Id.*

In 1990, the Pennsylvania legislature created a statutory cause of action for bad faith. That statute, which became effective on July 1, 1990, and is codified at 42 Pa.C.S.A. section 8371, provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

There is no legislative history that specifically concerns the passage of this statute, which was enacted as part of a comprehensive insurance bill.

**B. Defendant's Objection that Section 8371 Violates the Due Process Clause of the Fourteenth Amendment**

Defendant asserts that section 8371 allows for arbitrary and unreviewable decision making and requests that the Court declare it unconstitutional in violation of the due pro-

cess clause of the Fourteenth Amendment.[6] I am unable to agree.

Essentially, defendant contends that section 8371 violates the Fourteenth Amendment because it permits punitive damages and "non-punitive damages" (interest, costs and attorney fees) to be imposed by the court at its discretion upon a finding of bad faith without specifying a standard for a court to employ when deciding whether those remedies are appropriate. While disputing the correctness of the cases which uphold the validity of section 8371, defendant asserts that those cases are limited to the distinct issues of "the statute's lack of definition of 'bad faith'" and "the arbitrariness inherent in fixing the *amount* of punitive damages" and do not address defendant's additional Fourteenth Amendment objection. Defendant's Memorandum at 8 (emphasis original) (citing *Empire Fire & Marine Ins. Co. v. Nationwide Mut. Ins. Co.*, No. 93–0325, 1993 WL 220621, 1993 U.S.Dist. LEXIS 8989 (E.D.Pa. June 15, 1993); *Santoro v. Allstate Ins. Co.*, No. 91–3304, 1991 WL 197419, 1991 U.S.Dist. LEXIS 13591 (E.D.Pa. Sept. 25, 1991); *W.W. Management & Dev. Co. Inc. v. Scottsdale Ins. Co.*, 769 F.Supp. 178 (E.D.Pa. 1991); *Seeger v. Allstate Ins. Co.*, 776 F.Supp. 986 (M.D.Pa.1991); *Coyne v. Allstate Insurance Company*, 771 F.Supp. 673 (E.D.Pa.1991)).

■ As an initial matter, I agree with the reasoning and result reached by Judge Ludwig in *Coyne*, where the Court rejected an insurance company's arguments that section 8371 was unconstitutionally vague because it did not define the term "bad faith" and that the statute violated due process by failing to establish standards governing the award of punitive damages.[7]

■ With respect to the assertion that section 8371 inadequately defines the term "bad faith," the *Coyne* Court concluded that in the insurance context the term has acquired a peculiar and universally acknowl-

---

6. Plaintiff asserts that defendant either waived this argument or is barred from asserting it under the doctrine of judicial estoppel. I disagree. Defendant set forth its constitutional objections in its answer to the complaint and never took a position contrary to them during the litigation.

7. *Coyne* has been cited with approval by the Court of Appeals for the Third Circuit. *See, e.g., Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 751 (3d Cir.1994); *Colantuno v. Aetna Ins. Co.*, 980 F.2d 908, 910–911 (3d Cir.1992).

edged meaning: "any frivolous or unfounded refusal to pay proceeds of a policy.... For purposes of an action against an insurer for failure to pay a claim, such conduct imports dishonest purpose and means a breach of a known duty ... through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." *Id.* at 677–78, citing Black's Law Dictionary 139 (6th ed. 1990) and Appleman & Appleman, *Insurance Law and Practice* § 1612 (1967 and Supp. 1990). Judge Ludwig therefore concluded that despite the absence of a statutory definition of "bad faith" in section 8371 the phrase is sufficiently defined in the insurance context to provide constitutionally adequate standards to guide the conduct of the legal community and the insurance industry.[8] *Id.* at 678.

With respect to defendant's claim that section 8371 fails to provide standards that guide and limit the amount of punitive damages which may be awarded pursuant to the statute, the *Coyne* Court held that Pennsylvania law—which follows Restatement (Second) of Torts Section 908(2)—guides and limits such awards consistent with due process requirements. *Id.* at 679. Judge Ludwig therefore concluded that although "§ 8371 confers on the trial court significant discretion in its determination of punitive damages ... that discretion is not unlimited. As long it is exercised within the reasonable constraints required by Pennsylvania law, due process is satisfied." *Id.* at 680.[9]

I am guided by the reasoning of *Coyne* in resolving defendant's additional "first impression" challenge to section 8371—that "[t]he legislature's failure to provide standards to guide the imposition of damages under § 8371 and its impermissible delegation of that substantial public policy decision to individual courts on an ad hoc basis renders § 8371 unconstitutionally vague and facially violative of Due Process guarantees." Defendant's Memorandum, at 8. As Pennsylvania law adequately guides and constrains the amount of punitive damages awarded under section 8371, it equally provides a standardized context for "the imposition" of those damages. *See* Restatement (Second) of Torts §§ 908, 909.[10]

With respect to the imposition of interest, court costs and attorney fees, I conclude that the requirement that a court find bad faith prior to making such an award provides an adequate standard to guide the legal community and the insurance industry. In addition, I note that courts historically have retained wide discretion to fashion equitable remedies in situations in which legal remedies are insufficient. Therefore, I cannot agree with defendant's argument that section 8371 impermissibly delegates public policy to "individual courts on an ad hoc basis."[11]

C. The Application of the Seventh Amendment to Section 8371 Claims Brought in Federal Court

The Seventh Amendment provides that "[i]n suits at common law, where the

---

**8.** The *Coyne* opinion guided my charge to the jury in phase four.

**9.** In my charge to the jury in phase five, I was guided by the standards articulated in *Coyne* and in recent Supreme Court cases concerning punitive damages. *See, e.g., TXO Prod. Corp. v. Alliance Resources Corp.,* ―― U.S. ――, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993); *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).

**10.** I note that in this case the jury was charged, in accordance with section 908 of the Restatement, that despite a finding of bad faith, punitive damages should only be awarded if the jury determined that defendant's bad faith constituted outrageous conduct. The jury determined that defendant's actions were not outrageous and, accordingly, was not required to consider a punitive damage award.

**11.** None of the cases cited by defendant in its memorandum persuades me that this conclusion is incorrect. Only *Giaccio v. Pennsylvania,* 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966), requires comment. In *Giaccio,* the Supreme Court struck down as "void for vagueness" a Pennsylvania statute allowing costs to be awarded by a jury against a defendant acquitted of a misdemeanor if it found the defendant guilty of "some misconduct." *Id.* at 404, 86 S.Ct. at 521. The Supreme Court concluded that "[i]t would be difficult if not impossible for a person to prepare a defense against such general abstract charges as 'misconduct.'" *Id.* In the insurance context, however, the meaning of the term bad faith is sufficiently defined to both guide a party's conduct and to permit a party to prepare a defense against a bad faith charge. *See, e.g., Polselli,* 23 F.3d at 751.

value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." The Seventh Amendment is inapplicable to state trials. *See Melancon v. McKeithen,* 345 F.Supp. 1025, 1027 (1972) (holding that jury trial in civil cases is not "so fundamental to the American system of justice as to be required of state courts by due process."), *aff'd sub nom. Davis v. Edwards,* 409 U.S. 1098, 93 S.Ct. 908, 34 L.Ed.2d 679 (1973) (per curiam); *Colgrove v. Battin,* 413 U.S. 149, 169 n. 4, 93 S.Ct. 2448, 2459 n. 4, 37 L.Ed.2d 522 (1973) (Marshall, J., dissenting) (collecting cases).

■ In a diversity case, whether a party has a right to a jury trial is a matter of federal law. *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963) ("the right to a jury trial in the federal courts is to be determined as a matter of federal law.... The federal policy favoring jury trials is of historic and continuing strength."). The Seventh Amendment applies to both statutory and common law proceedings when the proceedings concern "legal" as opposed to "equitable" claims. *Curtis v. Loether,* 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974) ("The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.").

■ When determining whether a statutory right also includes a right to a jury trial, the inquiry focuses first on the statute and then on the nature of the action and the relief sought. As the Court of Appeals explained in *Cox v. Keystone Carbon Co.,* involving a plaintiff's right to a jury trial under a pair of ERISA provisions:

> [T]his court must first examine the language and legislative history of ERISA to

determine if Congress intended to create a right to a jury trial. If the statutory analysis does not reveal a congressional intent to provide a jury trial, the seventh amendment to the United States Constitution must be examined to determine if it commands that a jury trial be provided.

*Cox v. Keystone Carbon Co.,* 861 F.2d 390, 393 (3d Cir.1988) (citations omitted). Although *Cox* concerned a party's right to a jury trial under a federal statute, courts in this district have employed the *Cox* analysis when determining whether a party has a right to a jury trial when asserting a claim under a Pennsylvania statute. *See, e.g., Welcker v. Smithkline Beckman,* 746 F.Supp. 576, 581–582 (E.D.Pa.1990) (evaluating demand for jury trial under the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.).

**1. The Meaning of the Term "Court" in Section 8371**

■ Section 8371 does not explicitly provide for a jury trial. Plaintiff, however, asserts that I should construe the term "court" in section 8371 to mean "judge and jury." [12] Defendant contends that the term means only "judge."

Defendant argues for its interpretation on the basis that "court" is defined in 42 Pa. C.S.A. § 102, as "any one or more of the judges of the court who are authorized by general rule or rule of court, or by law or usage, to exercise the powers of the court in the name of the court." Section 102 does not refer to the jury in its definition of "court". Further, other courts in this district have concluded that the "plain language of the statute" shows "that the Pennsylvania legislators intended § 8371 actions to be heard and decided by the" judge and not the jury. *See Thomson v. Prudential Property and Casualty Ins. Co.,* No. 91–4073, 1992 WL 210088 at *3, 1992 U.S.Dist. LEXIS 12627 at *8 (E.D.Pa. Aug. 24, 1992).

Defendant also points to the legislative history of the insurance reform bill of which

---

12. I note that were I to adopt plaintiff's argument, I would in fact have to conclude that section 8371 does not reserve to the judge any role under the statute as it fails to specifically define the role of the judge as distinguished from that of the jury. It seems to me that plaintiff's interpretation amounts to construing the term court to refer only to a jury; and, in fact, I understand plaintiff to contend that where a jury trial is requested all decisions with respect to relief are to be made by the jury.

section 8371 was a part. In discussion regarding that bill, State Senator Scanlon specifically distinguishes between a decision made by the "court" as opposed to the "jury." *See* Statement of Senator Scanlon, Senate Journal, December 11, 1989, at 1453.[13] Even though this remark does not specifically concern section 8371, defendant argues that it suggests that the legislature did not generally equate the term "court" with "jury" in regard to the insurance reform bill which enacted section 8371.

The Pennsylvania legislature has enacted several statutes where the functions of the "jury" and "court" (meaning judge) are specifically distinguished. *See, e.g.,* 50 P.S. § 944[14] and 42 Pa.C.S.A. § 5327(c).[15] The language of these statutes leads me to conclude that the term "court" does not include "jury" and that the legislature specifically includes the term "jury" in a statute when it wants the jury to serve as a decision maker under the statute. I agree with defendant that the term "court" in section 8371 refers only to the judge and not to the judge and the jury and therefore conclude that section 8371 does not create a right to a jury trial.

2. The Seventh Amendment's Mandate

■ Having concluded that the Pennsylvania legislature did not intend to provide parties with a right to a jury trial for section 8371 claims, I turn to the question of whether the Seventh Amendment nonetheless mandates that a party may present a section 8371 claim to a jury when that claim is brought in federal court. *See Cox,* 861 F.2d at 393. To determine whether section 8371 embodies a "legal" as opposed to "equitable" claim, I first "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity" and then examine the remedy sought under the statute. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 565, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990).[16] The nature of the remedy sought is the more important prong of the analysis. *Id.,* 494 U.S. at 565, 110 S.Ct. at 1344; *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989).

Neither party compared an action against an insurer under section 8371 with actions brought in England prior to merger. However, I note that section 8371 is a statutory cause of action arising out of a bad faith breach of an insurance contract. Prior to merger, an action for breach of contract normally constituted a legal claim. I note, however, that section 8371 provides remedies not normally available at law. I therefore conclude that with respect to a section 8371 claim brought in federal court the applicability of the Seventh Amendment should be delimited by the nature of the remedy sought under the statute.

**13.** Senator Scanlon explained, "one of the changes in this current amendment is that the decision as to whether or not the plaintiff has exceeded the verbal threshold is a matter of law rather than a question for a jury. In short, if a suit is filed and testimony is adduced setting forth the injuries, the court will decide whether or not the threshold has been met rather than leaving it up to the figuring of a jury." *See* Senate Journal, December 11, 1989, at 1453.

**14.** Section 944, which concerns guardianship proceedings, provides: "If the person against whom the proceedings are taken shall demand in writing, prior to the decision of the court on such application, a trial by jury, it shall thereupon be the duty of the said court to award an issue, framed to determine the question of fact involved, and such trial shall be granted."

**15.** Section 5327(c), which concerns determination of foreign law, provides that the "court, not jury, shall determine the law of any governmen-

tal unit outside this Commonwealth. The determination of the tribunal is subject to review on appeal as a ruling on a question of law."

**16.** In *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), the Court held if a stockholders' derivative suit under Fed.R.Civ.P. Rule 23.1 against a third person presented legal claims the stockholders were entitled to a jury trial. The Court explained that "the 'legal nature' of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and third, the practical abilities and limitations of juries." *Id.* at 538 n. 10, 90 S.Ct. at 738 n. 10. Subsequently the Court narrowed the inquiry to the first two factors. *See, e.g., Tull v. United States,* 481 U.S. 412, 417–418, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987) (mentioning only pre-merger custom and remedy sought).

The Supreme Court has explained that "[r]emedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, were issued by courts of law, not courts of equity." *Tull*, 481 U.S. at 422, 107 S.Ct. at 1838. Accordingly, in *Thomson*, Judge Joyner held that the Seventh Amendment permitted a plaintiff seeking punitive damages pursuant to section 8371 to present that claim to a jury. *See Thomson*, No. 91–4073, 1992 WL 210088 at *3, 1992 U.S.Dist. LEXIS 12627 at *10 (E.D.Pa. Aug. 24, 1992). This holding apparently was not appealed. I believe that the Court in *Thomson* arrived at the right result with respect to punitive damages under section 8371.

■ The Court in *Thomson*, however, did not address the issue of whether the Seventh Amendment requires that a party be permitted a jury trial with respect to a claim for interest or court costs and attorney fees available under section 8371. I note the Seventh Amendment does not grant a party the right to submit equitable claims to a jury merely because legal claims also are present. *See Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1245 (3d Cir.1994) (no jury right attaches to equitable claims), *petition for cert. denied* —— U.S. ——, 115 S.Ct. 508, 130 L.Ed.2d 416 (1994); *see, e.g., Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 508, 79 S.Ct. 948, 955, 3 L.Ed.2d 988 (1959) (instructing that a district court should permit a jury to resolve legal claims presented in an action prior to the court ruling on the equitable claims); *but cf., Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646,

10 L.Ed.2d 720 (1963) (holding—in the context of admiralty law—that when a suit would become unnecessarily complicated if part is tried by a jury and part by a judge "[o]nly one trier of fact should be used for the trial of what is essentially one lawsuit to settle one claim split conceptually into separate parts because of historical developments").[17]

In its brief, plaintiff concedes—and I concur—that an award of prejudgment interest is an equitable remedy not implicated by the Seventh Amendment. *See* Defendant's Memorandum at 41; *Laird v. Hudson Engineering Corp.*, 449 F.2d 216, 217 (5th Cir. 1971), *cert. denied, United States Steel Corp. v. Laird*, 405 U.S. 955, 92 S.Ct. 1177, 31 L.Ed.2d 232 (1972). Similarly, because "there is no common law right to recover attorney fees, the Seventh Amendment does not guarantee a trial by jury to determine the amount of reasonable attorneys fees." *Resolution Trust Corp. v. Marshall*, 939 F.2d 274, 279 (5th Cir.1991); *see also Swofford v. B & W Inc.*, 336 F.2d 406, 413 (5th Cir.1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965) ("exemplary damages [under patent act] and attorneys' fees are not money claims triable by jury, although they are awarded in a legal action."); *Empire State Ins. Co. v. Chafetz*, 302 F.2d 828, 830 (5th Cir.1962) (noting that "[t]here was no common law right to attorney's fees."); *A.G. Becker–Kipnis & Co. v. Letterman Commodities, Inc.*, 553 F.Supp. 118, 122–124 (N.D.Ill. 1982) (discussing right to jury trial and attorneys' fees, concluding that court rather than jury makes determination).[18]

---

**17.** Because I do not believe that my decision to divide the determination of remedies under section 8371 between the court and the jury unnecessarily complicates this case, I decline to consider the applicability of *Fitzgerald* to the present matter. *See* 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2302 (1971) (it is not clear that the Court meant *Fitzgerald* to be applied outside of the admiralty context). Further, because I conclude, *infra*, that my determination of the issue of court costs and legal fees and interest will not require me to revisit a fact determined by the jury, I conclude that the Seventh Amendment does not preclude me from reserving the power to rule on the traditionally equitable remedies available pursuant to section 8371.

**18.** Plaintiff cites *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306 (2d Cir.1993), to support its assertion that the Court "should have allowed the jury to determine whether the Plaintiff was entitled to recover interest, attorney's fees and costs." *See* Plaintiff's Memorandum at 45. *McGuire*, however, involved a claim for attorneys' fees based on a contract providing for the award of such fees and is not applicable to the present controversy where plaintiff's claim for attorney fees is based on section 8371 rather than a contract between the parties. *McGuire*, 1 F.3d at 1314; *see also Empire State Ins. Co.*, 302 F.2d at 830 (refusing to allow jury to decide whether attorneys' fees should be awarded on claim based on state statute governing actions based on insurance policies).

I therefore conclude that when a federal court action pursuant to section 8371 seeks punitive damages a party is entitled to a jury trial on that issue and on the issue of bad faith. The Seventh Amendment does not, however, command a court to honor a party's request for a jury trial with respect to a claim for interest, court costs or and attorney fees pursuant to the statute. However, because plaintiff is entitled to a jury trial on its claim for punitive damages under section 8371, I am bound by the jury's finding that defendant acted in bad faith towards plaintiff in determining the appropriateness of the equitable remedies that plaintiff seeks under the statute.[19] *Cf. Roebuck v. Drexel University*, 852 F.2d 715, 737–738 (3d Cir.1988) (district court tried claims under 42 U.S.C. § 1981 and Title VII; the Court of Appeals held that "because the elements of proof are identical . . . a trial court is bound in a Title VII case to conform its verdict to the findings of the jury in a concurrently tried § 1981 case.").

### D. Section 8371 does not Violate the Seventh Amendment.

Because I have concluded that the Seventh Amendment requires that a party is entitled to present a claim for punitive damages brought in federal court pursuant to section 8371 to a jury, defendant argues that I must find the statute unconstitutional. Defendant argues that the Pennsylvania legislature's selection of the "court" as the decisionmaker under section 8371 is a substantive provision of the statute for the purpose of the *Erie* doctrine and must therefore be applied in federal court in violation of the Seventh Amendment. *See Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Defendant argues that a determination on my part that the designation of the decisionmaker is merely a procedural provision for the purpose of *Erie* would contravene the intent of the Pennsylvania legislature which I may not do under *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). *See* Defendant's Memorandum at 22–26. I am unable to adopt defendant's reasoning.

The Supreme Court has cautioned that a court is to avoid mechanistic determinations with respect to which provisions of a state statute are procedural and which are substantive. *See Hanna v. Plumer*, 380 U.S. 460, 466–67, 85 S.Ct. 1136, 1141–42, 14 L.Ed.2d 8 (1965) (choices between state and federal law are to be made by reference to the policies underlying the *Erie* rule). One of the important considerations in determining whether a provision of a state law is substantive or procedural is whether the provision can fairly be construed as outcome determinative. *See Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945); *Neifeld v. Steinberg*, 438 F.2d 423, 426 (3d Cir.1971) (the outcome determinative analysis, in light of *Hanna*, must be read with reference to the aims of preventing forum-shopping and avoidance of inequitable administration of the laws); *see also* Defendant's Memorandum at 28 (arguing that the selection of the judge rather than the jury as the decisionmaker pursuant to section 8371 is to protect insurance companies from extreme punitive damage awards that it claims juries are likely to level against insurance companies).

I conclude—as did the Supreme Court in *Byrd*—that there is not a strong possibility

---

Plaintiff also cites *Davis v. Naviera Aznar S.A.*, 37 F.R.D. 223 (D.Md.1965), to support its contention that this Court should have allowed the jury to decide whether plaintiff was entitled to interest, cost and attorney fees under section 8371. In *Davis*, which involved a suit by a longshoreman against a ship owner, the district court held that "where a general demand for a jury trial has been made, evidence of counsel fees and costs of litigation must be submitted to the jury, under proper instructions, for the determination of the jury in arriving at the total damages to be assessed against a third-party defendant." *Davis*, 37 F.R.D. at 225. In my view, *Davis* is

not persuasive because it is inconsistent with the authority I discussed earlier. *Davis* has never been cited by a federal court.

**19.** Both parties contend that the Court's procedure—having the jury determine bad faith and whether to award punitive damages but reserving for itself the decision whether to award interest, costs and attorney fees under the statute—will require the Court to re-examine the factual decisions made by the jury in this case in violation of the Seventh Amendment. I am not persuaded by either party's arguments on this point.

that a judge and a properly instructed jury would make substantially different punitive damage determinations under section 8371. *See United States v. Gilsenan*, 949 F.2d 90, 96 (3d Cir.1991) (a jury may be presumed to follow the court's instructions in arriving at a verdict), *cert. denied* 504 U.S. 987, 112 S.Ct. 2971, 119 L.Ed.2d 590. In either case Pennsylvania law binds the decisionmaker. In addition, as the Supreme Court noted in *Byrd*, the judge in the federal system has discretion pursuant to Fed.R.Civ.P. Rule 50 to "to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence. We do not think the likelihood of a different result is so strong as to require the federal practice of jury determination of dispute factual issues to yield to the state rule in the interest of uniformity of outcome." 356 U.S. at 540, 78 S.Ct. at 540.

My determination that the Pennsylvania legislature's selection of the court as the decisionmaker is not "an integral part of the special relationship created by the statute" *Byrd*, 356 U.S. at 536, 78 S.Ct. at 900, and may therefore be regarded as procedural for the purpose of *Erie* without contravening the Pennsylvania legislature's intent is buttressed by Pennsylvania rules of statutory construction. Title 46 P.S. § 551 provides that "[t]he object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Title 46 P.S. § 552(3) provides that in determining the intent of the legislature a court may presume "[t]hat the Legislature does not intend to violate the Constitution of the United States or of this Commonwealth." I am required to choose between two distinct interpretations of the legislative intent behind section 8371, one of which would require me to hold the statute—at least in part—unconstitutional and one of which would not. I conclude that the Pennsylvania legislature intended to provide for the court as decisionmaker under section 8371 consistent with the established requirements of the Seventh Amendment and hold that that provision is procedural for the purpose of *Erie*. Therefore, my determination that a party is enti-

tled to a jury trial with respect to a section 8371 claim seeking punitive damages does not contravene the intent of the Pennsylvania legislature.

E. Interest and Court Costs and Attorney Fees

In drafting section 8371, the Pennsylvania legislature adopted language that permits but does not compel the court to award punitive damages, prejudgment interest and to assess court costs and attorney fees against an insurer upon a determination that the insurer acted in bad faith toward the insured. Therefore, the jury's finding of bad faith permits a court to exercise its equitable power to order prejudgment interest and/or court costs and attorney fees.[20] At this juncture, however, I do not read section 8371 to mandate such remedies.

Accordingly, the parties will agree upon a briefing schedule to address the issues of whether plaintiff is entitled to interest and attorney fees and court costs as provided by section 8371. If appropriate, the parties also should agree on a schedule for all other motions filed or to be filed.

---

20. In stating that the jury's finding of bad faith permits me to award interest and court costs and attorney fees, I do not state a position with respect to whether that finding is supported by the weight of the evidence.