**David C. ANDERSON and Suzanne M. Anderson, Plaintiffs,**

v.

**NATIONWIDE INSURANCE ENTERPRISE, Nationwide Insurance Company, Nationwide Mutual Insurance Company, and Nationwide Mutual Fire Insurance Company, Defendants.**

**Civil Action No. 99–71 Erie.**

United States District Court, W.D. Pennsylvania.

March 1, 2002.

John W. McCandles, Anthony J. Sciarrino, Swenson, Perer, McCandless & Kontos, Erie, PA, for Plaintiffs.

William K. Conkin, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for Defendants.

## MEMORANDUM OPINION

McLAUGHLIN, District Judge.

This case arises out of a motor vehicle accident that occurred on January 4, 1995 in Erie County, Pennsylvania and the uninsured motorist claim that Plaintiff Suzanne Anderson filed in connection therewith. Plaintiffs, who at all relevant times were insureds under an automobile insurance policy with Nationwide, allege that the treatment of this uninsured motorist claim constituted a breach of their insurance contract, bad faith pursuant to Pennsylvania's bad faith statute, 42 Pa.C.S.A. § 8371, and an unfair trade practice prohibited by Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 *et seq.* Presently pending before the Court are cross-motions for partial summary judgment filed by Plaintiffs and Nationwide.

### I. BACKGROUND

As previously mentioned, the accident that gave rise to Suzanne Anderson's uninsured motorist claim occurred on January 4, 1995 in Erie County, Pennsylvania. On

that date, David Anderson was driving eastbound on Interstate 90 with his wife, Plaintiff Suzanne Anderson, who was sitting in the passenger seat. Weather conditions were poor, with heavy snow, wind and whiteouts. David Anderson testified that his vision was limited to approximately five car lengths ahead of him. Dep. of David Anderson, Nationwide Ex. S at 12. The Anderson vehicle collided with a tractor trailer that was sideways across both eastbound lanes of the highway. This tractor trailer was owned by Ward Kratzer Trucking and operated by Robert M. Wilkie. Shortly before the accident, another tractor trailer passed the Anderson vehicle. The Andersons came to believe that the unknown tractor trailor struck the Wilkie truck which in turn caused it to lose control. In essence, they concluded that the unknown truck was the proximate cause of the accident. This conclusion was supported in part by the police report which indicated that another vehicle had struck the Wilkie truck and the fact that there was damage to the Wilkie vehicle in an area that had not been struck by the Anderson vehicle. As a result of this accident, only Suzanne Anderson sustained personal injuries.

The Andersons filed a writ of summons against Ward Kratzer Trucking and Robert Wilkie in the Court of Common Pleas of Erie County, Pennsylvania on December 3, 1996 in order to protect Nationwide's subrogation rights against these parties. On January 28, 1997, Wallace Knox, Esq., counsel for Wilkie and Ward Kratzer Trucking, filed a Rule to File a Complaint in the case. Plaintiffs' counsel notified Nationwide that the Rule had been filed and offered it the opportunity to as-

sume the prosecution of the case. Nationwide did not take any action in the matter. On March 4, 1997, Suzanne Anderson, through her attorney, Anthony J. Sciarrino, Esq., made a formal claim for uninsured motorist benefits pursuant to her Nationwide policy.[1] Mr. Sciarrino's letter provided in relevant part:

[p]lease let this letter operate as a claim for uninsured motorist benefits on behalf of my client Suzanne Anderson. As you will recall from a review of the accident of January 4, 1995 the accident was precipitated by the actions of a unidentified tractor trailer. Accordingly, we are making a claim for Mrs. Anderson's injuries under her uninsured motorist coverage.

I have enclosed a copy of a Writ of Summons filed on behalf of my client against the second tractor-trailer operated by Robert M. Wilkie and owned by Ward Kratzer Trucking. I have filed said Writ to protect your interest in the event that Nationwide should wish to pursue a claim against Robert M. Wilkie and Ward Kratzer Trucking.

Counsel for the Defendants Wilkie and Ward Kratzer Trucking filed a Rule to File a Complaint in the above referenced case. I have secured a reasonable extension from Counsel for the Defendants in which to file that Complaint. Accordingly, Nationwide Insurance has the option to assume the prosecution of the case and proceed against the Defendants Wilkie and Ward Kratzer Trucking.

Ex. B to Pls.' Complaint at 1. By correspondence dated March 7, 1997, Nationwide advised counsel for Plaintiffs that the unknown vehicle "must have contact with

---

**1.** The terms of the Andersons' policy provide for uninsured motorist benefits in the amount of $50,000 per person and $100,000 per occurrence with the full tort election. Declara-

tions Page of Policy in Effect January 4, 1995, Ex. K to Plaintiff's Motion for Partial Summary Judgment.

our insured's vehicle for an effective Uninsured Motorist Claim." Ex. C to Pls' Complaint. Plaintiffs replied through counsel that Nationwide's denial was not consistent with Pennsylvania law. On April 7, 1997, Nationwide reversed its previous position and informed Plaintiffs' counsel that it "recognize[d] the uninsured claim and the fact that you have preserved the statute."[2] Ex. D to Pls' Complaint. On June 16, 1997, through counsel, Plaintiffs made a demand for settlement of Suzanne Anderson's claim under the uninsured provisions of her policy. Nationwide made no offer under the uninsured motorist provisions. Plaintiffs, on numerous occasions and to no avail, thereafter requested that Nationwide arbitrate the claim.[3]

On September 25, 1997, Nationwide, through the claims person on the file, Odell Graves, wrote to Plaintiffs' counsel. In that letter (which in pertinent part is set forth below), Mr. Graves offered to settle Suzanne Anderson's claim under David Anderson's liability coverage for $3500 and advised Plaintiffs' counsel that it would be necessary to proceed with a declaratory action if he felt that his clients qualified for presentation of an uninsured motorist claim.[4] Plaintiffs continued to assert that they were pursuing an uninsured motorist claim and continued to request arbitration of the claim in accordance with their policy.

By correspondence dated October 9, 1997, Mr. Graves reiterated that he viewed Suzanne Anderson's claim as a bodily injury claim under the liability provisions of David Anderson's policy and concluded with the following: "[i]f you wish to pursue this matter as an uninsured motorist claim, you can proceed with a declaratory action, which we will respond accordingly." Ex. A to Pls' Motion for Partial Summary

---

2. Counsel for Nationwide also conceded at oral argument that the contact requirement is invalid under Pennsylvania law. William K. Conkin, Esq., Hearing on Motions for Summary Judgment at 8.

3. In pertinent part, the uninsured motorist section of the Andersons' policy in effect at the time of the accident provided:

> **RECOVERY**
> 1. Before recovery, we and any injured party seeking protection under this coverage must agree on two points:
> a) whether there is legal right to recover damages from the owner or driver of an uninsured motorist vehicle; and if so,
> b) the amount of such damages.
> If agreement can't be reached, the matter will go to arbitration.

Ex. K to Pls' Motion for Partial Summary Judgment at 18.

4. In relevant part, the letter from Mr. Graves provided:

> Please be advised that Nationwide Insurance is offering $3500 to resolved [sic] the pending bodily injury claim, for injuries substained [sic] by your client, Suzanne Anderson. [sic] while she was a guest passenger in a vehicle operated by David Anderson, our policy holder.
> Our offer of settlement is based on the medical information in our file, relating to injuries in this loss and her prior losses and pre-existing condition.
> Our investigation of this loss indicates that the proximate cause of this loss and your clients [sic] injuries is Mr Anderson. As Mr Anderson's liability carrier we have a an [sic] obligation to protect him by addressing any liability claim against him. With this in mind we reaffirm our settlement offer of $3500.
> If you feel your clients qualify for presentation of an uninsured motorist claim, you can proceed with a declaratory action on that point. We will argue agressively [sic] that in accorance [sic] with present case law and our policy conditions, payment of a[sic] uninsured motorist claim, would preclude Nationwide from providing liability coverage or defense cost to Mr Anderson. If he is joined as an additional defendent [sic] by the additional tortfeasors involved. This would leave Mr Anderson in peril, which Nationwide feels would be bad faith, on our part.

Ex. E to Pls' Complaint at 1–2.

Judgment. In response to this letter, the Andersons filed a Petition to Compel Uninsured Motorist Arbitration in the Court of Common Pleas of Erie County on October 16, 1997. Ex. P. of Nationwide's Exhibits. Plaintiffs also filed a Complaint against Ward Kratzer Trucking and Robert Wilkie around this time in the Court of Common Pleas, having exhausted a number of extensions their counsel obtained on the Rule to File a Complaint and having been unsuccessful in numerous attempts to have Nationwide assume the prosecution of the action. In this Complaint, Plaintiffs alleged that an unidentified tractor trailer caused the accident when it struck the Wilkie truck and caused it to move to the right. Ex. L of Nationwide's Exhibits at ¶¶ 7–8. On preliminary objections filed by the Defendants, the Complaint was dismissed with prejudice because no allegations of fault were made against Ward Kratzer Trucking or Wilkie. Exs. M and N of Nationwide's Exhibits.

The record reflects that Nationwide sought advice from its counsel on the viability of the Andersons' Petition to Compel Uninsured Motorist Arbitration and its prospect for successfully opposing it. By correspondence dated November 19, 1997, Craig Murphey, Esq. advised Odell Graves that the court was likely to grant the Petition. Mr. Murphey's letter provided in pertinent part that:

> [y]ou have asked me to review the merits of the claimant's Petition to Compel Uninsured Motorist Arbitration, which is presently scheduled for argument before Judge Bozza on December 4, 1997.
>
> As it is constituted right now, the petition would probably be granted. Nationwide's policy provides for arbitration of disputes regarding a claim for uninsured motorist benefits, except for cases in which Nationwide contends that

the claimant is not an "insured" under the policy from which UM benefits are sought, or if there is a dispute about the limits of the UM coverage. As I understand it, there is no dispute that Ms. Anderson is an "insured" under Nationwide policy number 54 37 A 749150, or that said policy contained UM benefits of $50,000/$100,000.

Letter of Craig Murphey, Esq. dated November 19, 1997, Nationwide Ex. O at 1. Mr. Murphey's opinion is consistent with the deposition testimony of Nationwide's corporate designee, Jack Lenwood Bowling, Jr., to the effect that it was Nationwide's policy and practice in January, 1995 to arbitrate issues of both fault and damages in uninsured motorist claims. Ex. J to Plaintiffs' Motion for Summary Judgment at 124. In his letter, Mr. Murphey also observed that the Andersons appeared to seek recovery solely under the uninsured motorist provisions and therefore would not be barred by the prohibition on recovering under both the liability and the uninsured motorist provisions for one accident. He also noted that the state court complaint filed on behalf of the Andersons attributed no fault to Ward Kratzer or Wilkie but did attribute fault to the unknown tractor trailer. In sum, Mr. Murphey stated:

> [t]he upshot of all this rather confusing procedural maneuvering is that, since the statute of limitations has expired and it appears that the original defendant is going to get the complaint against him dismissed, there is no possibility that Ms. Anderson will recover any of the liability benefits from the Nationwide policy from which she seeks UM benefits. Thus, the above-referenced policy provision which would preclude Ms. Anderson from recovering UM benefits would not be applicable, and Ms. Anderson would be entitled to arbitrate her claim for UM benefits.

Given all of this, I believe the petition to compel arbitration will be granted and Nationwide will then simply be required to handle this case in the fashion it would handle any other claim for UM benefits.

*Id.* at 1–2. As reflected in Graves' claims log, Murphey ultimately refused to proceed with the defense of the Petition because he believed that Nationwide's position was meritless. Claims Log of November 25, 1997, Ex. E to Pls' Motion for Partial Summary Judgment. Graves reassigned the matter to Daniel Soom, Esq., an employee of Nationwide and one of its in-house counsel, who had agreed to proceed with the defense of the Petition. *Id.* Graves reviewed the Petition with Mr. Soom and noted in his claims log that Soom also expressed concerns regarding Nationwide's position and whether the company could ultimately prevail. Claims Log of January 7, 1998, Ex. F to Pls' Motion for Summary Judgment.

Notwithstanding these reservations, Nationwide filed an Answer and a Counterclaim for Declaratory Judgment in which it asserted that it was not obligated to provide uninsured motorist benefits because: (1) David Anderson was the sole and proximate cause of the accident and coverage was therefore provided under the liability provisions of the policy; and (2) Suzanne Anderson had failed to protect Nationwide's subrogation rights by bringing appropriate legal action against the potentially liable parties involved. It also made the following admissions in its Answer:

8. It is admitted that Defendant, Nationwide Mutual Insurance Company, has refused to arbitrate this matter. It is this Defendant's position that no uninsured motorist coverage applies in this case based upon the policy provisions provided to the Plaintiffs ...

10. It is admitted that no action has been taken on behalf of Defendant, Nationwide Mutual Insurance Company, to appoint an arbitrator or schedule an arbitration in this matter. It is this Defendant's position that there is no uninsured motorist coverage based upon the facts of this case and under the provisions of the policy with the Plaintiffs.

Nationwide's Answer and New Matter Counterclaim for Declaratory Judgment, Ex. Q of Nationwide's Exhibits. Judge Bozza of the Court of Common Pleas ruled that Nationwide's pleading was untimely and that the Andersons' request was meritorious. Order dated January 15, 1998, Nationwide Ex. R. He ordered Nationwide to nominate its arbitrator within fourteen days.

Despite the court's order, Nationwide failed to appoint an arbitrator and continued to treat the claim as a bodily injury claim arising under David Anderson's liability policy. Nationwide made its first offer to settle Suzanne Anderson's claim under the uninsured motorist provisions of her policy in July, 1998 and one month later proposed that the claim be resolved through non-binding arbitration. Letter from John Albano dated August 19, 1998, Nationwide Ex. I. The Andersons agreed to mediate the claim, and on September 28, 1998, more than a year and a half after Suzanne Anderson notified Nationwide that she was pursuing an uninsured motorist claim, the parties settled the claim for $17,500. In conjunction with the settlement, Nationwide presented the Andersons with a broadly worded release that was modified by Plaintiffs' counsel to pertain to claims "for personal injuries only." The settlement agreement also provided that, "[t]his release does not release Nationwide from any bad faith claims to be made by the Andersons arising from the Motor Vehicle accident of Jan. 4, 1995

or the actions of Nationwide relative to the handling of Anderson's claims." Settlement Agreement, Nationwide Ex. K.

The Andersons also allege that Nationwide attempted to have David Anderson, their own insured, joined as a defendant in the state court action against Ward Kratzer Trucking and Wilkie. A claims log entry of November 12, 1997 indicates that Graves contacted Wallace Knox, Esq., counsel for Ward Kratzer, regarding the "naming of ph Anderson as additional defendent [sic], Nationwide will handle costs." Claims Log Entry of November 12, 1997, Ex. S to Plaintiffs' Motion for Summary Judgment at 2. When questioned about this entry, Graves said that he contacted Knox in order to determine whether Anderson had been joined as a defendant; he did not recall what the costs reference was about. Wallace Knox stated that his time records indicated that he had a telephone conversation with Graves on November 12, but he did not recall the substance of the conversation. Dep. of Wallace Knox, Esq., Nationwide Ex. CC at 15.

The present action was filed on February 22, 1999.

## II. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In ·order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating wheth-

er the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party. *Knabe v. Boury Corp.,* 114 F.3d 407, 410, n. 4 (3d Cir.1997) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348).

## III. Discussion

Nationwide's motion for partial summary judgment regarding all claims by Suzanne Anderson and the Plaintiffs' motion for partial summary judgment both move for judgment as to liability on each of the three state law claims asserted by the Plaintiffs. Because the motions address the identical issues, we will discuss them together, considering each claim in turn. First, however, we will address Nationwide's motion for partial summary judgment regarding all claims by David Anderson.

### A. Claims by David Anderson

As previously noted, the Plaintiffs' Complaint alleges three claims: 1) breach of contract; 2) bad faith pursuant to 42 Pa.C.S.A. § 8371; and 3) unfair trade practices pursuant to 73 P.S. § 201–1 *et seq.* We find that David Anderson lacks standing to pursue all of these claims. The conduct that provides the primary basis for this action, and the complete basis for the breach of contract and unfair trade practices claims, is Nationwide's refusal to arbitrate the uninsured motorist claim that was made by Suzanne Anderson alone. David Anderson was not injured in the January 4, 1995 accident, made no insurance claim in connection with it, and suffered no injury as a result of Nation-

wide's handling of his wife's claim. The law of standing provides that a person who is not adversely affected by the matter he or she seeks to challenge is not an aggrieved party and lacks standing to obtain judicial relief. *Treski v. Kemper Nat'l Ins. Cos.*, 449 Pa.Super. 620, 674 A.2d 1106, 1111 (Pa.Super.1996) (*citing D'Amelio v. Blue Cross of Lehigh Valley*, 414 Pa.Super. 310, 606 A.2d 1215, 1217 (1992)).

■ In addition to Nationwide's refusal to arbitrate, the Plaintiffs also allege that Nationwide acted in bad faith by contacting Wallace Knox in order to have David Anderson joined in the state court action the Plaintiffs themselves filed. Nationwide disputes this allegation and the record does not conclusively prove or disprove it. We observe, however, that the state court case was dismissed on the defendants' preliminary objections before any joinder occurred and that David Anderson was not exposed to any liability or required to pay any expenses as a result of Nationwide's alleged conduct. Thus, because none of the conduct that is challenged in this case injured David Anderson, we will grant Nationwide's motion for partial summary judgment regarding all claims by David Anderson.[5]

### B. Claims by Suzanne Anderson

#### 1. Breach of Contract

Suzanne Anderson argues that Nationwide breached the insurance contract by refusing to arbitrate the issue of whether she was entitled to recover under the uninsured motorist coverage of her policy. Plaintiffs' Brief in Support of Motion for Partial Summary Judgment at 8. Nationwide asserts, citing *Klinger v. State Farm Mutual Auto. Ins. Co.*, 895 F.Supp. 709

(M.D.Pa.1995), *aff'd*, 115 F.3d 230 (3d Cir. 1997), that it had no contractual duty to offer payment prior to the arbitration, and that it did not breach its duty to pay benefits because it ultimately paid Suzanne Anderson the $17,500 arrived at in the mediation. Nationwide further asserts that the release Suzanne Anderson signed bars her from asserting a contract claim. Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment to Dismiss All Claims by Plaintiff Suzanne Anderson at 8–9.

■■ We find that Nationwide's refusal to arbitrate constituted a material breach of the insurance contract. This refusal, as previously discussed, necessitated the filing of the Petition to Compel Uninsured Motorist Arbitration, which was ultimately granted. Nationwide's unilateral determination that the claim was not arbitrable was based on its conclusions that: 1) David Anderson caused the accident of January 4, 1995; and 2) Suzanne Anderson failed to preserve Nationwide's subrogation interests. However, these defenses fall squarely within the scope of the arbitration clause in Nationwide's policy that provides for arbitration in the event of a dispute over the "legal right to recover damages from the owner or driver of an uninsured motor vehicle." Otherwise stated, the previously cited policy language unambiguously provided the exclusive forum (an uninsured motorist arbitration) for resolution of the very issues upon which Nationwide rested its refusal to arbitrate.

Our conclusion on this point finds support in a long line of Pennsylvania cases dating back to *National Grange Mut. Ins. Co. v. Kuhn*, 428 Pa. 179, 236 A.2d 758 (Pa.1968). In *National Grange*, the insur-

---

**5.** As will be discussed more fully later in this opinion, the jury in this case will, nevertheless, be entitled to consider whether the attempted joinder occurred insofar as it impacts on Suzanne Anderson's claim for punitive damages.

er argued that the arbitration clause in its uninsured motorist provisions did not extend to disputes regarding whether a driver fell within the definition of "uninsured motorist." The Court held that the arbitration clause extended to all disputes arising under the coverage, finding that the parties "contemplated one method, and one method only, for the resolution of disputes under this coverage. That method was arbitration and all such disputes should be so decided." *Id.* at 761. Further support for our conclusion is found in *Harleysville Mut. Ins. Co. v. Medycki*, 431 Pa. 67, 244 A.2d 655 (Pa.1968). The insurer in *Harleysville* took the position that its insured was not entitled to uninsured motorist benefits, and therefore that it was not required to arbitrate the matter, because Medycki had not complied with a number of his obligations under the policy, including executing a reservation of rights agreement and furnishing copies of the pleadings he filed against the alleged uninsured motorist to the insurer. The Court rejected this argument, and found it was an "oversimplification to assert that the denial of coverage by appellant ipso facto removes the uninsured motorists clause from the policy and with it the arbitration provision . . ." *Id.* at 656. More recently, in *Brennan v. General Accident Fire and Life Assurance Corp., Ltd.*, 524 Pa. 542, 574 A.2d 580, 583 (Pa.1990), the Court had the occasion to interpret the meaning of the following arbitration provision:

> [i]f we and the covered person disagree whether that person is legally entitled to recover damages from the owners or operator of an underinsured motor vehicle, or do not agree as to the amount of damages, either party *may* make a written demand for arbitration.

*Id.* at 583 (emphasis supplied). The Court found that this language mandated arbitration whenever the insured and the insurer disagreed about any matter necessary to the resolution of the underinsured motorist claim. It rejected the insurer's argument that the clause did not extend to a dispute regarding whether the company was permitted to set off amounts received from the tort-feasor's insurer. *Id.* We note parenthetically that the language in the Nationwide policy with respect to the duty to arbitrate was mandatory rather than permissive.

We also find that Nationwide's reliance on *Klinger* is misplaced. In *Klinger*, State Farm failed to offer settlement prior to an arbitration on damages held more than ten months after the accident. *Klinger*, 895 F.Supp. at 709–711. In the interim, a lawyer for State Farm failed to apprise a claims representative that an arbitration on liability had been held until more than three months after the fact, and the injured parties' counsel failed to provide the claims representative with the parties' full medical records. *Id.* at 711. Approximately one month prior to the scheduled arbitration on damages, a State Farm claims representative completed his evaluation of the claim and recommended payment. State Farm did not pay at that time and attempted unsuccessfully to continue the arbitration on damages. At the arbitration State Farm produced no witnesses or evidence. Significant awards were made to the insureds, and State Farm tendered the amounts a little over one month after the arbitration. *Id.* The court held that the insurance contract did not require State Farm to offer a settlement prior to the arbitration, and that State Farm did not breach its duty to pay because it tendered the amounts awarded. *Id.* at 713.

The basis for the breach of contract claim in *Klinger* was that the carrier improperly delayed paying its insureds. Although Nationwide's briefs in this case attempt to characterize this dispute as one

involving valuation, the fact remains that the central issues concern Nationwide's refusal to arbitrate and alleged attempt to importune the joinder of its own insured.[6]

■ Finally, we reject Nationwide's contention that judgment on the contract claim should be rendered in its favor on the basis of either the previously signed release or the contention that the Plaintiffs sustained no damages even if there was a breach. The clear language of the release applies only to claims for personal injury, and does not bar the instant breach of contract claim. Regarding the issue of damages, the expenses Suzanne Anderson incurred in connection with the Petition to Compel Uninsured Motorist Arbitration flow directly from Nationwide's refusal to arbitrate her claim. In Pennsylvania, insurers are obligated to defend whenever a complaint filed against their insured has the potential to fall within the coverage of the policy, and the failure to do so permits the insured to recover the cost of hiring substitute counsel and defending the action among other possible elements of damage.

*Gedeon v. State Farm Mut. Auto Ins. Co.*, 410 Pa. 55, 188 A.2d 320, 322 (Pa.1963). Here, the opposite is true; Suzanne Anderson was forced to take affirmative legal action because her insurer failed to honor its contractual obligation to resolve her claim through arbitration.[7]

In conclusion on this point, we find that Nationwide's refusal to arbitrate was contrary to the policy and to the extensive case law previously cited in this section. Accordingly, we will grant the Plaintiffs' motion for partial summary judgment on the issue of breach of contract, and will deny Nationwide's motion for partial summary judgment regarding all claims by Suzanne Anderson on the same issue.

### 2. Bad Faith

■ The Pennsylvania bad faith statute, 42 Pa.C.S.A. § 8371, provides in its entirety:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the in-

---

**6.** The following exchange occurred between the Court and counsel for Nationwide at oral argument:

> THE COURT: ... Having read the briefs in this case, it occurred to me that at least in part it looked like both sides were ships passing in the night on one of the critical issues in the case. Your papers were directed in part at establishing that the plaintiffs had failed to establish on the record a triable issue of fact as to the reasonableness of, or unreasonableness, I should say, of Nationwide's position as to the evaluation of the claim. In their response the plaintiff forswears that really as an independent basis for liability. Frankly, on this record I think it would have been a loser, if that's the tree they're barking up, carriers are free to evaluate cases and they do it all the time. There was certainly enough in the mix here that there could have been a reasonable dispute on the value of the case. The first is was Nationwide in bad faith for compelling the insureds to take this to Common Pleas, to get a Common Pleas judge to

> enforce a petition to compel arbitration; in other words, did Nationwide at the end of the day have a reasonable good faith basis for resisting arbitration. That's one issue. That has nothing to do with valuation. The second issue is the issue of whether or not, as a matter of fact, Nationwide attempted to importune the joinder of its own insured. Those are the two big issues in the case, as I see them. But let's start with the first one?
>
> MR. CONKIN: And I agree, your Honor, from those issues ...
>
> THE COURT: Spring a lot of other things, but those are the primary things that are driving this.
>
> MR. CONKIN: I agree with your Honor.
>
> Hearing on Motions for Summary Judgment at 4–5.

**7.** The amount of Suzanne Anderson's damages on her breach of contract claim will be a matter of proof at trial.

sured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

In *Terletsky v. Prudential Property and Cas. Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680 (Pa.Super.1994), *app. denied*, 540 Pa. 641, 659 A.2d 560 (Pa.1995), the court characterized bad faith as:

any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e. good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky*, 649 A.2d at 688. Under Pennsylvania case law, in order to prevail on a bad faith claim, an insured must present clear and convincing evidence that "the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa.Super.1999) *citing MGA Ins. Co. v. Bakos*, 699 A.2d 751, 754 (Pa.Super.1997).

██ We note that in many instances, bad faith allegations arise out of insurance claims having incomplete or unclear facts, and these cases have frequently been resolved in favor of the insurers at the summary judgment stage. *See Quaciari v. Allstate Ins. Co.*, 998 F.Supp. 578, 581 n. 3 (E.D.Pa.1998), *aff'd*, 172 F.3d 860 (3d Cir.

1998). Insurers have prevailed, for example, when the factual circumstances of a claim for benefits made a dispute regarding its merits reasonable. *See, e.g., id.* at 582–83 (inconclusiveness of police report and arbitration award made it reasonable for insurer to reverse position and require additional information); *Leo v. State Farm Mut. Auto. Ins. Co.*, 939 F.Supp. 1186, 1190–92 (E.D.Pa.1996), *aff'd*, 116 F.3d 468 (3d Cir.1997) (subjective nature of claims made it reasonable for insurer to require statement under oath about extent of injuries); *Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 590–92 (E.D.Pa.1999), *aff'd*, 234 F.3d 1265 (3d Cir.2000) (reasonable for insurer to wait to evaluate a case when value of injury was unclear due to poor documentation). Courts have rejected bad faith claims based upon an alleged delay in payment when the delay was due to a continuing investigation of the claim or to simple negligence. *Kosierowski*, 51 F.Supp.2d at 588–89; *see also Grove v. Aetna Cas. & Surety Co.*, 855 F.Supp. 113, 115–16 (W.D.Pa.1993) (observing that repeated requests for more information resulting in delay of final determination may or may not constitute bad faith denial of benefits). In evaluating instances of delay, courts have "looked to the degree to which a defendant insurer knew that it had no basis to deny the claimant; if delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred." *Kosierowski*, 51 F.Supp.2d at 589 (*citing Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 234 (3d Cir.1997)).

This case, however, is quite different. The undisputed record demonstrates that despite clear and unambiguous policy language which created the exclusive arena for the resolution of uninsured motorist disputes, Nationwide repeatedly refused to put its "team" on the arbitration field,

so to speak, and continued to do so even after it had been ordered to arbitrate in common pleas court. The conduct that is challenged in this case does not concern, as it does in so many cases, the insurer's position on the merits of an underlying insurance claim that is unclear or factually complex. Rather, the conduct that is challenged here is the insurer's persistent refusal to arbitrate its dispute with its insured notwithstanding an unambiguous arbitration clause in its policy. There are no disputed factual issues regarding this conduct, and in light of the clear policy language and previously cited case law, we have no difficulty concluding that Nationwide lacked a reasonable basis for failing to arbitrate Suzanne Anderson's uninsured motorist claim.[8]

*Kosierowski* is informative by comparison. The insured in *Kosierowski* argued that its insurer had acted in bad faith by, among other things, failing to appoint an arbitrator in a timely manner. *Kosierowski*, 51 F.Supp.2d at 589. The relevant arbitration clause provided that claims would be submitted to arbitration "upon the written request of either party." *Id.* The court granted the insurer's motion for summary judgment on the issue, however, because it found that the first unequivocal demand for arbitration was not made until two months later than the insured claimed, and consequently, that the amount of time that elapsed between the insured's demand for arbitration and the insurer's appoint-

ment of an arbitrator was only one month. *Id.*

■■■ Here, however, there is no dispute regarding whether Suzanne Anderson properly requested arbitration or any other procedural matter.[9] Nationwide admittedly refused to appoint an arbitrator because it had unilaterally determined that Suzanne Anderson was not entitled to uninsured motorist coverage. As discussed previously, this conduct was unsupportable under either the insurance policy or controlling Pennsylvania law.

There is also no issue of material fact in this case regarding the second prong of a bad faith claim, namely whether Nationwide knew of or recklessly disregarded its lack of a reasonable basis in denying the claim. Initially, the fundamental clarity of the contract language and the corporate designee's testimony that it was the policy and practice to arbitrate uninsured motorist claims speaks to Nationwide's recklessness in denying Suzanne Anderson's claim. Furthermore, Mr. Murphey, the first counsel assigned to the case, clearly advised Nationwide that its position was without merit. Rather than heeding Murphey's advice, the company reassigned the claim to its in-house counsel, Mr. Soom. Although Soom also advised Nationwide that its position was tenuous, the company proceeded with its defense of the Petition to Compel Uninsured Motorist Arbitration. Finally, Nationwide continued to refuse to arbitrate in the face of the court order grant-

---

8. Although the merits of the underlying claim are not at issue in this case, we note that it appears likely that Nationwide would have waived one of its two defenses to the claim, namely that Suzanne Anderson failed to preserve its subrogation interests. The record reflects that Nationwide was given ample opportunity to assume the prosecution of the state court action and consistently failed to take them.

9. As we observed earlier, Nationwide admitted in its answer to Plaintiffs' Petition to Compel Uninsured Motorist Arbitration that it had refused to arbitrate Suzanne Anderson's uninsured motorist claim. Nationwide justified its refusal entirely on its position that uninsured motorist coverage did not apply to this claim. Answer, New Matter, and Counterclaim, Nationwide Exh. Q at 3.

ing the Andersons' Petition to Compel Uninsured Motorist Arbitration.

For the reasons stated above, we find that Suzanne Anderson has presented clear and convincing evidence that Nationwide acted in bad faith when it refused to arbitrate her claim.

■ Nationwide has moved for summary judgment on Suzanne Anderson's claim for punitive damages. We will deny its motion for partial summary judgment on this issue. Suzanne Anderson is entitled to a jury trial on her punitive damages claim. *Klinger v. State Farm Mut. Automobile Ins. Co.*, 115 F.3d 230 (3d Cir. 1997).[10]

■ The issue for the jury will be whether punitive damages are appropriate and if so, the amount of such damages. Punitive damages are one possible element of damage under the bad faith statute, and are circumscribed by the factors set forth in the Restatement (Second) of Torts. *See Coyne v. Allstate Ins. Co.*, 771 F.Supp. 673, 679 (E.D.Pa.1991) (bad faith statute does not violate due process because limits of punitive damages are supplied by the Restatement which Pennsylvania has adopted). They may be awarded for:

> conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.

Restatement (Second) of Torts § 908(2). Punitive damages must be based on con-

duct that is malicious, wanton, reckless willful or oppressive; the purpose of awarding them is to "punish [a defendant] for outrageous conduct done in reckless disregard of another's rights." *Coyne v. Allstate Ins. Co.*, 771 F.Supp. 673, 679 (*quoting Schecter v. Watkins*, 395 Pa.Super. 363, 577 A.2d 585, 595, *app. denied*, 526 Pa. 638, 584 A.2d 320 (1990)). Under Pennsylvania law, the question of punitive damages is usually determined by the trier of fact, and the Court is to decide the issue only when no reasonable inference from the facts alleged supports a punitive award. *Eagle Traffic Control v. Addco*, 889 F.Supp. 200, 201 (E.D.Pa.1995), *citing Trotman v. Mecchella*, 421 Pa.Super. 620, 618 A.2d 982, 985 (Pa.Super.1992). Here, we find that a jury could reasonably conclude that a punitive award is appropriate.

We finally observe on this point that in deciding the issue of punitive damages, the jury will be required to pass on the disputed factual issue of whether Nationwide attempted to importune the joinder of David Anderson, its own insured. As we briefly acknowledged earlier, this allegation is relevant to Suzanne Anderson's bad faith claim because Nationwide consistently took the position that David Anderson was at fault for the January 4, 1995 accident and attempted to settle her claim under his liability coverage. The jury will therefore be required to resolve the disputed issue along with consideration of all the other facts when assessing whether the totality of Nationwide's actions in refusing to arbitrate Suzanne Anderson's claim warrants a punitive award.

In sum, we find that Suzanne Anderson has established by clear and convincing

---

10. The remaining elements of damage under the bad faith statute are reserved to the discretion of the Court because they are equitable in nature. *Younis Bros. & Co. v. Cigna Worldwide Ins. Co.*, 882 F.Supp. 1468, 1475 (E.D.Pa.1994), 882 F.Supp. 1468, 1475 (E.D.Pa.1994). It is our intention to reserve our determination as to these damages until the jury has determined the issue of punitive damages.

evidence that Nationwide's refusal to arbitrate her claim was done in bad faith. In light of the clear policy language and the extensive case law on the subject, the conduct was without a reasonable basis. In light of the communications Nationwide had with its attorneys and the state court order, Nationwide either knew of or recklessly disregarded the fact that its conduct was without a reasonable basis.

### 3. UTPCPL

■ The record does not support Suzanne Anderson's claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201–1 *et seq.* The private cause of action provided by this statute is limited to "unfair or deceptive methods, acts, or practices in the conduct of any 'trade or commerce,' § 201–3, which is defined as 'the advertising, offering for sale, sale or distribution of any services and any property.'" *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir.1992). The conduct of which Anderson complains, however, is not related to an unfair trade practice but rather concerns Nationwide's refusal to perform its contractual obligations. This conduct is simply not the proper subject matter for a UTPCPL claim.

### IV. CONCLUSION

To summarize, we find that summary judgment in favor of Suzanne Anderson is appropriate on her contract and bad faith claims. We find that summary judgment in favor of Nationwide is appropriate on all claims by David Anderson and on Suzanne Anderson's UTPCPL claim.

An appropriate order follows.